N. I. & S. Bumpus *against* Platner, Bay, and Un-
DERWOOD.

Where A. conveyed land to B., by deed, with covenants of warranty, and B.
    executed to A. a bond and a mortgage, to secure the payment of part of
    the purchase money, B. cannot be relieved against the mortgage, on the
    ground of a failure of consideration, for want of title in A., possession having
    been taken by B., under the deed, and there being no eviction at law, under
    a paramount title ; and, more especially, in a case where, the bond and
    mortgage having been assigned to C., B., in consideration of forbearance,
    executed a new bond and mortgage to C., for the same premises, will relief
    be denied against the assignee for a valuable consideration, without notice
    of any fraud, or failure of consideration, in the creation of the original debt.
A purchaser, without notice, from one who has fraudulently purchased, is not
    affected by the fraud.
And a purchaser, with notice to himself, from one who purchased without no-
    tice of the fraud, may protect himself under the first purchaser.

THE bill, which was for an injunction, stated, that *Plat-
ner*, pretending to have a title to lot No. 28, in the *Freema-
son's Patent*, on the 30th of *December*, 1794, sold and con-
veyed it to *N. & I. Bumpus*, for 1,788 dollars, of which the
sum of 100 dollars was paid down, and a bond and mortgage
taken for the residue, since which the sum of 450 dollars
had been paid on the bond. The deed contained the usual
covenant of warranty. *N. & I. Bumpus*, afterwards, sold
100 acres of the land to *Simeon Bumpus*, the other plaintiff.
The defendant, *Bay*, procured from *Platner* an assignment
of the bond and mortgage, without any consideration ; and then
prevailed on the plaintiffs, *N. & I. Bumpus*, to execute a
new bond and mortgage, on cancelling the old, for the balance
due, 1,519 dollars and 87 cents, which were executed the
22d of *June*, 1799. The bill alleged, that, about that time,
*Platner*, being suspected of forgery, was prosecuted for
certain forgeries, and convicted and sentenced to the state
prison ; that the pretended deed from *Allen M·Dougall*, the

original grantee, to *Platner*, for the lot of land, was forged; that one *Ebenezer Belknap*, and one *Seth Turner*, were con= cerned with *Platner* in his frauds and forgeries, which was well known to *Bay* at the time of his procuring the bond and mortgage, and he well knew the title to be suspicious. That *Bay*, in *February*, 1810, sold and assigned the bond and mortgage to the defendant, *Nathan Underwood*, who knew, at the time, that the pretended title of *Platner* to the land was false ; that *M'Dougall*, long before the pretended deed to *Platner*, had conveyed the lot to *John Weather-wax*, in pursuance of a trust, existing for that purpose, at the time of the grant; that *Weatherwax* gave a mortgage of the premises to *Fountain* and others, in *England*, dated the 2d of *March*, 1773, who, afterwards, assigned the same to *John Thurman*, of this state, late deceased. The bill prayed an injunction against the proceedings of *Underwood*, on the bond and mortgage, &c.

The answer of *Platner* admitted the sale, &c,, by him ; but he averred that *M'Dougall's* deed was genuine, and executed for a valuable consideration, and the title good; that if he ever assigned the bond and mortgage to *Bay*, it was without consideration, and for the sole use of him, *Platner*.

*Bay*, in his answer, admitted the assignment from *Platner* ; and alleged that he gave *Seth Turner* the full amount of the bond and mortgage ; that he did not know that *Platner's* title was invalid. He took the assignment from *Platner* for greater security, believing that *Turner* was the owner of the bond and mortgage ; no consideration was paid to *Platner*, and the assignment was made while he was in gaol. The assignment from *Turner* was upon the sale to him of certain lands in the *Minisink Patent*, of which *Bay* was the owner; and he was told, and believed, that *Platner* authorized *Turner* to sell the bond and mortgage ; and when *Platner* made the assignment, he did not pretend that the sale by *Turner*, to him, was without authority. He heard

of *Platner* being prosecuted for forgery, about 6 months before the assignment by *Platner* to him.

*Underwood*, in his answer, admitted the sale and assignment of the bond and mortgage, to him, by *Bay*, on the 27th of *February*, 1810, but said it was for a fair and valuable consideration. He said that he had no knowledge to induce a belief that the deed to *Platner* was forged; that the possession of the plaintiffs and others had been held for twenty years, and were now held under that deed, or the title of *Platner*; that he was induced to purchase the bond and mortgage, from the advice of counsel that *Thurman's* claim was groundless.

*Elijah Snow*, a witness, deposed, that, in 1793, he was at the house of *Platner*, and told him that the occupants on the *Freemasons'* patent wished to discover the owners. *Planter* said he did not know that he ever had any concern with the lands in that patent, but would endeavour to find out the owner. Afterwards, in the same year, the witness again saw *Platner*, who said he knew all about it, and produced *M'Dougall's* deed. The witness informed the plaintiffs, and other settlers, of these circumstances, and the plaintiffs went and purchased of *Platner*. That *Platner* told him, about 10 years ago, that *Bay* had got the bond and mortgage without his consent, and without consideration. The witness saw *Bay*, 14 or 15 years before, in *Herkimer* county, when he said that he had come up to get the bond and mortgage exchanged, and, for that purpose, would give a longer time of payment. The witness suggested to him a suspicion that the deed to *Platner* was forged, having heard that *Platner* was lately convicted of forgery, and *Bay* answered, that it looked rather suspicious. *Bay* told the plaintiffs, that he had got the bond and mortgage for a debt *Platner* owed him, and offered them further time of payment, to change the bond and mortgage. About that time he communicated to the defendant, *Underwood*, all

1814.

BUMPUS
v.
PLATNER.

the suspicious circumstances above mentioned, relative to *Platner's* deed.

Another witness stated, that he heard *Platner*, in 1796, or 1797, tell *I. Bumpus*, one of the plaintiffs, that the title from *M'Dougall* was good; and that, in 1798, or 1799, *Bay* said the same to the plaintiffs, and that he had purchased the bond and mortgage of *Platner* for a valuable consideration, and applied to the plaintiffs to change them.

It was proved, also, that *Platner* had declared, within 3 or 4 years, that his title from *M'Dougall* was good, and that *Bay* had got the bond and mortgage from him, when in trouble, for nothing; that *Bay*, at that time, said he had sold his bond and mortgage to *Underwood*, at a discount, to be collected at his own risk.

It was further proved, that in 1803, ejectment suits were brought by *Thurman* against the plaintiffs, and that the counsel informed them that the deed to *Platner* was a forgery, and advised them not to produce it. After one trial, in which the defendants succeeded, on the ground of a presumption of payment, a compromise took place.

On the part of the defendants, it was proved, that the plaintiffs had lived on the premises for more than 20 years, and the witness always understood that they held possession under *Platner's* title; that no other title was ever mentioned, except that and *Thurman's*, who failed in his ejectment, in 1803.

*William Bay* testified, that the bond and mortgage were taken by his father, (one of the defendants,) on a contract for the exchange of lands with *Turner*; his father letting *Turner* have lands in the *Minisink* patent for land in *Esperanza*.

The plaintiffs exhibited a deed from *M'Dougall* to *Weatherwax*, in 1771, and the mortgage from *Weatherwax*, in 1773.

*Gold*, for the plaintiffs.

*Kirkland,* contra.

THE CHANCELLOR. I have not been able to discover any principle arising out of the facts, in this case, that will enable me to set aside the bond and mortgage given by the plaintiffs to the defendant, *Bay.* The ground taken in support of the bill, is the failure of consideration : 1. Because the title, derived from *Platner,* was founded on a forged deed from *McDougall* to *Platner :* 2. If not, yet that there was a prior conveyance from *McDougall* to *Weatherwax.*

1. The allegation of forgery is not proved, and, probably, would never have been made, if *Platner* had not been convicted of some other forgery, in 1799, and which was several years after he had sold to the plaintiffs. But we are not authorized to declare the deed a forgery, on mere suspicion, nor because *Platner* was convicted of forgery, in another case, totally unconnected with this. The deed appears to have been proved before a master, by a subscribing witness, in 1797, or two years before the plaintiffs contracted with *Bay.* They purchased with knowledge of several circumstances, now put forward as grounds of suspicion ; for those circumstances were known to *Elijah Snow,* in 1793, and by him told to the plaintiffs, before they took their deed of *Platner,* in *December,* 1794. When the bond and mortgage, originally given to *Platner,* were given up and cancelled, in 1799, and a new bond and mortgage (being the same now in question) executed to *Bay,* he appears to have been the assignee of the original bond and mortgage, without the knowledge of any fact to impeach them, and to have purchased them for a valuable consideration. There is no such knowledge brought home to him by any proof in the case. He alleges, in his answer, that he purchased the bond and mortgage, *bona fide,* and for a valuable consideration; and his averment must be taken for truth, until it is duly disproved. The consideration is supported by the deposition of *William Bay,* and the fact is not contradicted.

The bond and mortgage were renewed upon his giving further time of payment, and there does not appear to have been any undue practice in procuring them. If the assignment from *Platner*, or his agent, was unduly procured, it is a question to be settled between *Platner* and *Bay*, in the present suit, not between *Bay* and the plaintiffs.

2. The failure of consideration, because *M'Dougall* had no title when he conveyed to *Platner*, does not appear to be sufficiently ascertained. It is said to be very difficult to extract from the books, what the rule of equity is upon this point of failure of consideration, after the agreement is executed; (1 *Fonb.* 363. ;) but, I apprehend, it may be safely said, that there is no case of relief on this ground, when possession has passed and continued, without any eviction at law, under a paramount title. *Platner* conveyed to the plaintiffs, with a covenant of warranty, and he is bound to defend their title at law ; and *non constat*, that he is not able and willing to do it. There was a case under Lord *Nottingham*, (2 *Ch. Cas.* 19. *Anon.*) in which the purchaser was relieved from the payment of the purchase money; but he had already lost the land, by eviction, under a better title. If the title fails, in this case, the plaintiffs can resort to the covenants in their deeds for their indemnity. I consider an eviction at law an indispensable part of the plaintiffs' claim to relief here, on the mere ground of failure of consideration. The proof is, that they have been in possession of the land ever since the purchase from *Platner*, (and which was near twenty years ago,) under that title, and no other. It would appear, indeed, from *exhibits* in the cause, that *M'Dougall*, under whom *Platner* claimed, had previously sold to one *Weatherwax*, whose estate was afterwards forfeited to the people of this state. That may be the better title, but it cannot be tried here upon this bill. The people are no party to this suit, and the presumption is ripening fast against that title, from the lapse of time since it accrued,

which was during the revolutionary war. It is impossible for me to know what legal, or what valid, defence may be set up against it. Perhaps there may be none, but the present application is clearly premature ; and it would be without precedent, and dangerous in principle, to arrest and bar the recovery of the debt, while the purchaser is still in possession under the purchase deed, and there has been no eviction at law.

There is another, and a very strong ingredient, in this case, that forbids relief. I allude to the fact, that several years after the purchase from *Platner*, and enjoyment of the land, the plaintiffs took up the original bond and mortgage, and gave new ones to *Bay*, the assignee, in consideration, of forbearance. He stands in the light of an assignee for a valuable consideration, without notice of any fraud, or want of consideration, in the original creation of the debt. He has, therefore, strong claims against the interference of the court against him. Such purchasers are especially protected in their subsequent contracts. Thus, where *A.* gave a usurious note to *B.*, who sold it to *C.*, for a valuable consideration, without notice of the usury, and *A.* took up the note, and gave a bond to *C.* for the amount, it was held good. The substituted security was not liable to the charge of usury, which vitiated the original security. (*Cuthbert* v. *Haley*, 8 *Term Rep.* 390.) On the same principle, a purchaser, without notice from a fraudulent purchaser, is not affected by the fraud. (*Jackson* v. *Henry*, 10 *Johns. Rep.* 185.) The maxim, in these cases, is, *in jure non remota causa sed proxima spectatur.*

I have considered this case, all along, as if *Bay* was still owner of the bond and mortgage, and have not deemed it material to examine, as to any notice with which *Underwood*, the present holder of the securities, might be charged. It is a well-settled rule of this court, that a man who is a purchaser, with notice himself, from a person who bought without notice, may protect himself under the first purchaser.

The reason is, to prevent a stagnation of property, and because the first purchaser being entitled to hold and enjoy, must be equally entitled to sell. (*Lowther* v. *Carleton*, *Cases temp. Talbot*, 187. 2 *Atk.* 139. 242. *Harrison* v. *Forth*, *Prec. in Ch.* 51. *Brandlyn* v. *Ord*, 1 *Atk.* 571. *Mertins* v. *Jolliffe*, *Amb.* 313. *Sweet* v. *Southcote*, 2 *Bro.* 66.)

I am, accordingly, of opinion, that the bill, as to all the defendants, must be dismissed, with costs.

Bill dismissed.