Judge Carr,
delivered his opinion.
Lucy White, residing in the county of Louisa, directed by will, that her executor Jackson, should sell her land, lying in Hanover; and divide the money in certain portions, among certain legatees. The executor, wholly unacquainted with the land, employed Street to survey it. He did so, and made out a plat, shewing a tract of 378 • acres. By this survey the land was sold at public auction, *505 and bought by the plaintiff. The contract was executed, by the delivery of a deed to the purchaser, and his giving a deed of trust on the land, which also included some slaves; and executing his bond for the purchase money. After this, he discovered that one Wright, claimed title to a part of the land included in his deed; which is considered by the witnesses to amount to one-fourth in value of the whole tract. Upon this, he proposed to rescind the contract. The executor refused, but offered to survey the land, and abate for any deficiency which might be found to exist. This proposition was not acceded to. The time of payment came round. The trustee advertised to sell, under the deed of trust; and the plaintiff filed this bill to stay the sale, and to rescind the contract. The Chancellor dissolved the injunction, except as to 0500; and the plaintiff appealed.
The first question is, ought this contract to be rescinded ? In the argument for the appellant, it was contended, that there was no difference in reason and principle, between an application for specific execution, and an application to rescind. Many cases were cited to prove, that in a case like this, equity would refuse a specific performance; and hence the conclusion was pressed upon the Court, that we ought to rescind the contract. I had thought it well settled law, that the two cases were separated by a broad and strong line of distinction. Executory contracts for real property, and some other subjects, offer to the party the alternative, of either suing at law for damages, or asking the aid of equity to obtain the specific thing. The application to equity is not ex debito; but merely presents to the sound discretion of that forum, this question: Is it better, for the furtherance of justice, considering all the circumstances of the case, to give the party a specific execution, or to leave him to his legal remedy ? Very different is the question, where a party asks the Court to rescind a contract, especially an executed contract. In the first case, the Court merely decides which of two remedies *506 a party shall pursue. In the second, it annihilates a solemn contract, rendered still more imposing by the fact, that the parties have carried it into execution; thereby changing materially their situations, and giving birth to new rights and obligations. The vendor has parted with the title and possession of his land, and has taken his money, bonds, or other equivalent. The vendee has entered into possession, clothed with the fee or other estate purchased; and for security of his title, has taken a deed with such covenants and warranty, as his contract called for. To undo all this, is a strong handed measure, and none but a clear and strong case will justify it. Accordingly, we find it laid down, in all the equity books, that the Court is in the daily habit of refusing the specific execution of contracts; which, at the same time, it just as promptly refuses to rescind. Thus, in Mortlock v. Buller, 10 Ves. 306, Lord Eldon says, “It is much too late to discuss now, whether this Court ought to order a contract, that it would not specifically perform, to be delivered up; and to decree the performance of a contract, which it would not order to be delivered up; for the distinction is always laid down, that there are many cases in which the party has obtained a right to sue at law, and under such circumstances, that his conscience cannot be affected here, so as to deprive him of that remedy; and yet on the other hand, the Court, (declaring that he ought to be permitted to sue at law,) will not actively interpose to aid him, and specifically perform the contract.” The cases are numerous, in which we see bill and cross bill, the one for specific execution, the other to have the agreement delivered up to be cancelled, and both dismissed. Many of the following authorities, are of that kind, and all of them state the settled distinction between the two cases. Underwood v. Hithcox, 1 Ves. 279; Barnardiston v. Lingood, 2 Atk. 133; Twining v. Morrice & al. 2 Bro. Ch. Cas. 326; Bay v. Newman, 2 Cox’s Ch. Rep. 77; Tilly v. Peers, cited in Mortlock v. Buller, (ubi sup.) Mason v. Armitage, 13 Ves. 25; Clifford v. Brooke, Ib. 131. See *507 also, 14 Ves. 413; 16 Ves. 86; 17 Ves. 167; 18 Ves. 335. After decisions so numerous and so uniform, the point must surely he considered at rest.
When the application is to rescind an executed contract for land, the English books lay it down as a general rule, (admitting of but few exceptions,) that to justify such decree, fraud must appear; and this fraud must be distinctly put in issue by the pleadings. If the charge be a mere failure of consideration, arising from the sale of a defective legal title, unmingled with fraud or mala jides of any kind, it is generally laid down, that the vendee will be left to the covenants and warranty in his deed. See 1 Fonb. 374, (n); Co. Litt. 384, Butler’s note; 4 Cruise, 90; Sugd. 314 -15-16-17, and the cases cited; Bampus v. Platner, 1 Johns. Ch. Rep. 213; Abbot v. Allen, 2 Johns. Ch. Rep. 519; Governeur v. Elmendorf, 5 Johns. Ch. Rep. 84; Edwards v. M’Clay, Coop. Equ. Rep. 307.
To this general rule, there are some exceptions of cases, which may be classed under the head of mistake; but the mistake must be plain and palpable, and must affect the very substance of the subject matter of the contract. As where the executor of a mortgagee assigned the mortgage to the heir, upon the mistaken idea, that the latter was entitled to it. Turner v. Turner, 2 Ch. Rep. 81. So, if there is an agreement for the purchase of an estate, and the purchase money has been paid, if it turns out that the estate was the vendee’s, the Court will order the purchase money to be refunded. Bingham v. Bingham, 1 Ves. 126. This doctrine has been also laid down in our own Reports. Armstrong v. Hickman, 6 Munf. 287; Tucker v. Cocke, 2 Rand. 51.
In the case before us, the first ground of relief is out of the question. There being no fraud or misrepresentation, no suppression of truth, or suggestion of falsehood, charged in the bill, any evidence taken as to those points would have been irrelevant to the issue; and however strong a case of fraud it might have shewn, ought not to have in™ *508 fluenced the Court at all, but to have been suppressed, as improperly taken. If this were not so, the pleadings, instead of being a shield to protect parties from surprise, would he a snare to entrap them. But in truth, there is not a tittle of evidence in the record to raise even the suspicion of fraud; on the contrary, it clearly proves the bona fides of the whole transaction.
How stands the case on the ground of mistake ? The vendee has bought a tract of land for 278 acres. It seems, that in making the survey, the surveyor ran in upon one of Wright’s lines, so as to take from him a small slip of land, not more, I believe, than 8 acres; leaving the purchaser about 270, instead of the 278 acres, he supposed he had bought. I fix the number of acres lost, at about 8, because that is more than the surveyor thinks it; and I take him to be a much better judge of this matter, than those who were induced, either by their occupations or their interests, to take particular notice of the land, and speak loosely of its being 8, 10, 15 or 20 acres. We all know how little weight such opinions are entitled to, when accuracy is in question. But take the land lost at the largest estimate, and say it was worth a fourth of the whole purchase money, (which is contradicted by the surveyor, and cannot, I think, be the fact:) yet can it be said, that it furnishes one of those cases of mistake, which would authorise the rescisión of the whole contract? Has not the purchaser gotten the substance of the thing bought? The surveyor says that this slip has no peculiar value: that it is maiden woodland, and there is a sufficiency of timber for the place, without it. If you say that for such a deficiency as this, not affecting the bulk of the land, you will rescind, where will you stop ? I have shewn that equity will refuse a specific execution in many cases, where it would not rescind; and yet, there are decisions in abundance, to shew that a trifling deficiency, of a few acres, in a tract of land, will not even present an obstacle to a specific execution; the Court saying, that such deficiency lies clearly in com *509 pensation, and that the party is made whole, by abating so much from the purchase money, as is an equivalent for it. See 10 Ves. 306; 14 Ves. 413; and many other cases might be cited. I am clear, therefore, that the Chancellor was right in refusing to rescind this contract. It is said, however, that he ought not to have dissolved the injunction, for any part of the purchase money, till there had been a survey. None of the witnesses make the loss amount to more than a fourth of the whole price. I cannot think it will be found to amount to any thing like that sum; but if it should, the Chancellor has kept $500, about a fourth of the purchase money, tied up, to await further investigation. This, I think, was as far as he ought to have gone; and much more like equity, than to have tied up the whole, and left the purchaser in the enjoyment of both funds, during the whole contest.
It was contended, that on the principles of Lane v. Tidball, Gilm. 130, the Chancellor should not have permitted the trustee to proceed to a sale of the land, before the question of interference was decided by a survey. But I do not think that case applies. There, the cloud was upon the title; and there were no means of removing it, but by tedious and complicated suits. Here, there is no embarrassment of title. It is a mere question of interference of boundaries, depending on a single, and known, and undisputed line, between the land sold and Wright’s; as to which the surveyor could only have erred, by not having Wright’s survey before him, and which can be corrected in an hour, and the whole matter settled. To this end, the Chancellor ordered a survey; and the vendee may either have it made any day before the sale under the deed, which must be advertised four weeks; or he may prevent a sale by the payment of the money.
I think it a clear case for affirming the decree.
*510 Judge Coalter:
The witnesses in this case, though differing considerably in opinion, as to the quantity of land covered by Wright’s elder deed, concur in the opinion that its value is one fourth of the whole purchase. One witness estimates, the quantity at ten or twelve acres, one at twelve or fifteen, and the other at fifteen or twenty. Yet, without giving any other reason, than that it is maiden land, they all concur in estimating the injury to the purchaser by the loss of it, as above.
If there was any peculiar value in this land, either intrinsically, or relatively, as a part of the tract purchased, and that in consequence thereof, the loss could affect it to that extent, and ought therefore to be considered, as the substance of the thing contracted for, or even a great object in that contract, it ought to have been proved.
Without, therefore, considering the general doctrines of the law, on the subject of the rescisión of contracts, (which I have not had time to investigate to my satisfaction) I am satisfied that in this case, there is nothing to justify the rescisión of this contract; and therefore, concur in the opinion, that this furnishes no ground to reverse the decree.
I am also of opinion, that as the land of Wright, where it interferes with that-of the appellant, is bounded by a. natural boundary, to wit, branches, &c. and which could be shewn to purchasers under the deed of trust, even if no survey could be made before the day of sale; and as no dispute seems to exist, either as to Wright’s title, or its boundaries; I cannot perceive such necessity for a survey previous to a dissolution of the injunction, as would justify a reversal of the decree. I concur, therefore, in its affirmance.
Judges Green, and Cabell, concurred, and the decree was affirmed.*

 The President, absent.