McFARLAND (RICHARDSON v.). See Case No. 8,788.

McFARLAND (UNITED STATES v.). See Case No. 15,674.

## Case No. 8,790.

### M'FARLANE v. GRIFFITH.

[4 Wash. C. C. 585.] [1]

Circuit Court, Pennsylvania.[2] April Term, 1826.

COURTS—PRACTICE IN FEDERAL COURTS—FOLLOWING STATE—AT LAW—IN EQUITY.

The doctrine warranted by the supreme court of Pennsylvania, that "the assignee of a bond or mortgage for a valuable consideration, and without notice, stands in no better situation than the assignor, and is exposed to every legal and equitable defence that could be asserted against him," is to be regarded as a rule of decision by this court, under the thirty-fourth section of the judiciary act of 1789 [1 Stat. 92], in all cases at common law; but the rule in equity is quite otherwise; and in an equity suit, the rule of equity, and not that of the state is to be observed.

[Cited in Burt v. Keyes, Case No. 2,212.]

[Cited in Washington v. Pollard, 5 Grat. 452.]

[This was a bill for an injunction by McFarlane against Mary Griffith.]

WASHINGTON, Circuit Justice. This is a bill to be relieved against a bond and mortgage given by the plaintiff to Putnam Catlin, to secure the purchase money for a tract of land sold and conveyed by the latter to the former. The bill states that on the 17th of April, 1815, the plaintiff was in possession of eighty acres of land under an improvement right; on which he had resided for several years, and made many valuable improvements. That about the time above mentioned, Putnam Catlin alleged that he had purchased the large tract which included the above eighty acres of land, of John B. Wallace, and that he would eject the plaintiff, unless he would agree to pay him a consideration for the land he possessed, averring at the same time, that the title of Wallace was indisputable. That being an illiterate man, and supposing this assertion to be well founded, he was induced, under the terror occasioned by this threat, to agree to pay the said Catlin for his land at the rate of three dollars per acre; and having accepted of a conveyance of the land, he executed a bond and mortgage of the same land to the said Catlin to secure the payment of the purchase money, amounting to the sum of $240. The bill then charges, that at the time of this transaction, the right to this tract of land. if any right thereto other than that of the commonwealth or of the plaintiff did exist, was not in the said Catlin, but in the defendant, to whom Wallace had by some instrument or conveyance previously transferred his pretended right, and for whom the said Catlin then acted as agent. But that in fact the title was, and still is in the commonwealth of Pennsylvania, subject only to the pre-emption right of the plaintiff. That Catlin has assigned the before mentioned bond and mortgage to the defendant, without any consideration, but as her agent, and that she is not a purchaser for valuable consideration, but is affected by the knowledge of facts acquired by her said agent, and of the deception practised by him on the plaintiff. The prayer of the bill is, that the defendant may be decreed to deliver up the bond and mortgage to be cancelled, and that she may be enjoined from further proceeding in an ejectment brought by her in this court on the mortgage deed. The answer admits that Catlin did, on or before the 17th of April, 1815, execute and deliver to the plaintiff the conveyance mentioned in the bill, and that the plaintiff did also execute a bond and mortgage to the said Catlin to secure the purchase money of the said land. But the defendant does not admit that the plaintiff had any right to the land previous to the above conveyance to him; on the contrary, she believes that the title to the same was vested in the said John B. Wallace, who conveyed a large tract of land, of which this was a part, to the said Catlin, for the purpose of enabling him to make conveyances thereof to such persons as might contract with him for the purchase thereof. She denies that at the time of the conveyance to the plaintiff, or at any previous time, the right to the land so conveyed was in the defendant, or that she had any claim thereto, either in law or equity, previous to the assignment of the mortgage to her, or that the said Catlin, or the said Wallace, acted as her agent prior to the said assignment. The answer then avers that on the 20th of December, 1817, the said Wallace was indebted to the defendant in the sum of $13,000 and upwards, for so much money before that time lent and advanced to him by the defendant, and that in consid-

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[2] [District not given.]

eration thereof, the said Catlin did on that day assign to the defendant the before mentioned bond and mortgage, together with other securities, to the amount of $13,000. She believes that neither Wallace or Catlin had any notice of the pretended right of the plaintiff to the land in question, or that there was any title to the same in the commonwealth. She denies that she ever had notice of any such pretended title in the plaintiff, or in the commonwealth, to this land, or of any of the circumstances alleged in the bill to have taken place prior to the conveyance to the plaintiff. The answer then insists upon the protection afforded her as a bona fide assignee or purchaser for a valuable consideration, without notice, in like manner as if it were specially pleaded. To this answer, a general replication has been filed, and a number of depositions have been taken, which it is not necessary particularly to notice. The plaintiff's counsel has rested his case upon the following Pennsylvania decisions: [Swift v. Hawkins] 1 Dall. [1 U. S.] 17; [Wheeler v. Hughes] Id. 23; [Inglis v. Inglis] 2 Dall. [2 U. S.] 49; 2 Yeates, 23, 464, 543; 5 Bin. 232; 1 Serg. & R. 438; 4 Serg. & R. 177; 10 Serg. & R. 140. The defendant's counsel cited Mitf. Eq. Pl. 122, 162, 215; 2 Ves. Jr. 457; 1 Johns. Ch. 213; 2 Johns. Ch. 519. The ground of equity stated in the bill, and relied upon at the bar is, that John B. Wallace, at the time when his agent Putnam Catlin conveyed his land to the plaintiff, had no title to it, and therefore a failure of the consideration is inferred; which, it is contended, discharges the plaintiff from his obligation to pay the purchase money, and consequently entitles him to the equitable interposition of the court to set aside the securities given therefor, even against an assignee who has purchased them bona fide for a valuable consideration, and without notice of the matters of equity charged in the bill. In support of this argument, the plaintiff's counsel relied altogether upon a long and uniform course of decisions of the supreme court of this state; and it must be admitted, that to a certain extent, it is fully maintained by those decisions. The principle which they lay down is, that the assignee of a bond or mortgage, though for valuable consideration, and without notice, stands in the place of the obligee or mortgagee, and is exposed to every legal or equitable defence which could be asserted against them; and that if there has been a failure of the consideration for which those instruments were given, which the defendant is at liberty to prove; such assignee is not at liberty to recover in an action of debt upon the bond, or of scire facias upon the mortgage. The Pennsylvania cases which support this doc-

trine, turn upon the construction of two acts of assembly of this state, passed in the year 1705. We consider them therefore as establishing the law of this state upon the subjects to which they apply, and consequently, under the thirty-fourth section of the judiciary act of 1789, they are to be regarded by this court as rules of decision in all cases of suits at common law. But this is a case in equity, and must be governed by those rules and principles which prevail in a court of equity; and amongst those there are none better settled than this, that against a bona fide purchaser for a valuable consideration paid, and without notice of those circumstances which form the basis of the plaintiff's equity, the court will take no step, and grant no relief whatever. The reason of the rule is obvious. The defendant, who has innocently paid his money under a well founded confidence in the goodness of the title which he has purchased, has as much equity to be protected, as the plaintiff can possibly have to be relieved against him, and consequently, the equity being equal, this court can do nothing but leave the parties as they are, and refer the plaintiff to such legal remedy as he may be entitled to. If in this case, the plaintiff has been careful enough to provide by proper covenants the means of indemnity in case of defective title to the land conveyed to him, there is the less reason for the extraordinary interposition of a court of equity in his favour. If he has failed to protect himself by such covenants, his neglect can never be made the foundation of an equity proceeding against a purchaser for valuable consideration without notice. In giving this opinion, we do not mean, nor do we in effect controvert the doctrine of the supreme court of this state, which has been referred to. Were this an action at law founded on the bond, we should conform, without hesitation, to the decisions of that court. All we mean to say is, that where the obligor applies to the equity side of this court for relief, it must, upon principles of equity, be denied, if it appear by the plea, or answer of the defendant, that he is a purchaser for valuable consideration paid, without notice of the facts on which the plaintiff's equity is founded. The injunction therefore must be dissolved, and the bill dismissed with costs.