Tucker, P.
The first question presented in the argument of the cause, regards the jurisdiction of the court. To this question, therefore, our attention must first be directed.
I am of opinion, that the jurisdiction of a court of equity to injoin the recovery of the purchase money of a tract of land, on the ground of a deficiency in quantity, the contract having been by the acre, cannot, at this day, be questioned; and if it were clear, that the deficiency, here, resulted from that cause, and not from the loss of part of the tract by superiour title, there could be no question, I think, of the propriety of the interference of the court of equity to injoin the recovery of the purchase money, or to decree compensation for deficiency.
But it is exceedingly doubtful, upon this record, from what cause the deficiency proceeds; and I am strongly inclined to think it arises, in truth, from the fact, that the western lines of the deed from Preston to Kane, ran in upon one of the Bishops, whose title is confessedly superiour to Roger’s or Kane’s title under Preston. If, however, this be the fact, it is nevertheless not conclusive against the jurisdiction, according to the practice with us. In England, indeed, if the purchaser has obtained his deed, he can have no redress in equity, but must look to his covenants; and if he has but a covenant of warranty, he can have no redress until eviction. And this principle has received countenance from the decisions of the courts of a sister state. Bumpus v. Platner, 1 Johns. Ch. Rep. 213. 218. Abbott v. Allen, 2 Id. 519. But with us, even at a time when there was most rigour in this matter, it was admitted, that the party might have relief, provided he could prove an outstanding superiour title in a third person. Yancey v. Lewis, 4 Hen. & Munf. 390. Grantland v. Wight, 5 Munf. 295. And in Ralston v. Miller, 3 Rand. 44. judge Green, delivering an .opinion in which the other judges concurred, remarks, that this court has, in favor of purchasers, gone far beyond any thing which has been sanctioned by the courts of chancery of England, or elsewhere, in injoining the payment of purchase money, after the purchaser has taken possession under a convey *608 anee, especially with general warranty. Yet it has never gone so far as to interfere, unless the title was questioned by a suit either prosecuted or threatened, or unless the purchaser could shew clearly that the title was defective. Chancei]or Kent seems to have deemed an actual suit pending as sufficient ground of interference; Johnson v. Gere, 2 Johns. Ch. Rep. 546.
The jurisdiction thus confessedly exercised by the courts of equity with us, results from what may be called the preventive justice of those tribunals. It arrests the compulsory payment of the purchase money, when the purchaser can shew that there is either a certainty, or a strong probability, that he must lose that for which he is paying his money. It gives him the relief, too, though his demand may be in the nature of unliquidated damages, because he has no other means of ascertaining them. Thus, if the purchaser can shew, that he has received a deed with general warranty, and that the title is bad, yet if he has not been evicted, he cannot maintain covenant at law, and ascertain his damages before that tribunal, in order then to set them off against the demand. If, indeed, there are covenants for good title &c. it may be otherwise; and so it may often happen, that an action may be brought where there are such covenants of good title «fee. upon which the validity of the title may be tested, and the damages of the party ascertained. Whether in these cases, relief could be given in equity, it is not necessary here to say. But where there is only a covenant of warranty, this cannot be done; and hence, I conceive, the party would be entitled to the assistance of a court of equity, where he is fullhanded with proof that his title is defective, although he has not yet been evicted.
It is this which constitutes the difference between the case just supposed, and that of Robertson v. Hogsheads, 3 Leigh 667. In that case, it was the opinion of the court, that a party could not come into equity to injoin a judgment for the purchase money, on the ground of a fraud, which could only be compensated in damages. If damages were his object, a court of law was his proper forum; and, moreover, as those *609 damages must be altogether uncertain, it would be grossly improper to tie up the whole purchase money, until it should be ascertained, whether any fraud had been committed, and what damages had been sustained. As the party could sue at law, he was required to sue at law, and establish his demand, before he attempted to set it off. But here, as the purchaser cannot sue at law, and as, indeed, the court is not altogether without a standard by which to measure the sum to be injoined, the same objections do not prevail.
But though, upon general principles, a purchaser may be relieved against the payment of the purchase money, when he can prove his title to be defective, I do not think that Kane is entitled to relief in this case, if it should turn out, that the deficiency arises from defect of title only. For, as it respects Koger, he has no claim whatever against him, for any defect of title. He has taken the title of Preston, and Preston only is liable to Kane upon the covenant of warranty in case of eviction. And as to Preston, he cannot be rendered liable until eviction, which may never happen. There can be no pretence for resorting to the preventive justice of the court as to him, since he has no claim against Kane to tie up; and there can, therefore, be no ground for anticipating the operation of his covenant, by rendering him responsible before eviction. The bill should he dismissed as to him.
From these views, it is obvious, that it is of the utmost importance to ascertain clearly, whether the injury sustained by Kane consists in the deficiency of quantity within his specified limits, or the want of title to part of the land within those limits. If it be the latter, then I think the bill cannot be entertained, either against Koger or against Preston. It is one of the errors in those proceedings, that this matter is left in the utmost obscurity; and upon the cause going back, the proper proceedings should be instituted to place it in a clearer light.
As to the alleged fraud, which has been so much the subject of proof and of argument: nothing is more clear, than that that matter is within the influence of the decision of *610 Robertson v. Hogsheads. Quoad the fraud, this is a suit iu equity for damages, and it is a case in which a large sum has been injoined, in part, upon the uncertain chance of a recovery of damages, which, after all, might be trivial and insignificant. Certainly, if the case stood on this ground alone, it could not be sustained; and, I think, upon no other principle than that of settling the whole controversy in one suit, could we be justified , in retaining that part of the case now.
Should we do so, however, still the verdict on the issue must be set aside. If we are not to understand the certificate of the judge, as meaning that all the depositions in the cause were read, then we cannot say, and the chancellor could not know, what evidence was before the jury; and when he does not know this, he must defer to the opinion expressed by the judge in his certificate against the verdict. If, on the other hand, we are to understand that all this mass of evidence was before the jury, then it may be confidently affirmed, that there was not a fair trial of the only issue properly before them. Without objecting to the generality and vagueness of the issue, we may at least assume, that it referred to the only fraud alleged in the bill. No other fraud was in issue in the cause; and nothing,— and least of all, fraud,—can be the subject of trial, until it is put in issue. Now, in this case, the only misrepresentation charged is as to the quantity of flat land, which might have arisen from mistake; whereas the evidence adduced to fix fraud upon the vendor, is various, and of the gravest and most aggravated character. This has so tended to inflame the verdict of the jury, that the chancellor ought not to have been satisfied with it. It must therefore he set aside. Whether it will be necessary to direct another issue or not, must depend upon the aspect of the case hereafter.
As to the defence set up by Sailing, the testimony in support of it is so unsatisfactory, and its weight depends so much upon the doubtful character of the witnesses, that it may be necessary to refer that also to a jury. It is so far sustained, I think, that it ought not to be rejected, until it has been submitted to that test. ■
*611 Upon the whole, I am of opinion, that the decree should be reversed in toto, and the cause sent back to be again proceeded in, with such instructions as shall conform the sion of the chancery court to the opinions already declared.
It remains only to say, that if the defendant chooses, he may move to amalgamate the causes in the court below; but until he does so, this court considers the cases as distinct. He cannot be allowed to hold aloof, and take the chance of double costs, if he had succeeded, and after a decree against him to seek to unite the cases, so as to be chargeable with single costs only. Indeed, in the decree of reversal here, he will have the advantage of the cases being distinct, since there must be costs in each case.
The other judges concurred. Reversed, and remanded with instructions &c.