Harper, Ch.
The latter of'the two cases stated (and which is the principal case now to be considered) presents, in a great degree, the same questions which were made in the case of Gillam vs. Briggs, heard by me as Chancellor and decided in 1830, and the testimony, as to the most material points, is precisely, the same. I shall not think it necessary, therefore, to consider at great length the points determined in that case, nor shall I make any statement of the facts so far as they are stated in that decree, to which I refer. Since the decree, the defendant Gillam has brought his action -at law dn the contract, and recovered a verdict for $ .It appears from the record at law, that the general issue and the statute of limitations were pleaded to the action. No defence was attempted on the ground that Gillam had failed to make’a good title according to the contract, and the first question made in the present case is, whether having failed to make his defence at law, Briggs can now come into this Court for a rescission on the contract. I am of opinion he is not estopped by the judgment at law. No doubt this is a proper jurisdiction in which to obtain the rescission of a .contract. And though I believe the true rule to be, that what parties have once had an opportunity of litigating in the course *433 of a judicial proceeding, they shall not be permitted to draw into question again ; whatever might -have properly been put in issue, shall be concluded to have been in issue and determined; yet I think Briggs is not precluded in this instance. Though he might, perhaps, have defeated the action at law, complete justice could not have been done in that Court. If Gillam failed to make or tender such a title as by his contract he was bound to make, this would have defeated the action, but it would not have put an end to litigation. The court of law could not award a restoration of the possession of the land, or the reimbursement of that part of the purchase money which had been paid. There must have been still a suit in Equity for these purposes. Or if we suppose that the land and the purchase money would have been recovered by separate actions, yet the saving of circuity and multiplicity of litigation, is a good ground of jurisdiction. This Court can direct the proper accounts, and being properly in possession of the case, will do complete justice between the parties. The present bill by Briggs is. for a rescission of the contract on the grounds on which he before resisted specific performance. Besides contending for the goodness of the title, Gillam now relies on the ground that Briggs has bound himself to accept such title as he is able to make.
In the former decree, I decided that the title offered by Gil-lam was of so doubtful a character, that on a bill for a specific performance by him, Briggs could not be compelled to accept it; unless he had in some way bound himself to accept such title as Gillam was able to make. That was the point adjudicated in the case, and I should not feel at liberty to enter into it again, even if I doubted the correctness of my opinions, which I do not.
In that case also I considered (but without determining) the question, whether Briggs had bound himself to accept such title as Gillam was able to make. I expressed the opinion, that if Briggs was aware of the defect of title when he went into possession, he was so bound, and I refer to the decree for the reasons and authorities on which the opinion was founded.
*434 I intimated the opinion that there was not sufficient evidence of his having had such knowledge. But upon reconsidering the testimony as to that point, I am more doubtful of the conclusion. The letters of Briggs, shewing that he was employed by Satterwhite to make enquiries about “ Porcher, Gaillard and Moore,” as I before observed, give reason to suspect that he knew the purpose for which those enquiries were made, and that it was to cure Satterwhite’s defect of title to the land. But in addition to this, Briggs slates in his bill, that Gillam had rented part of the land to one Brooks, and by the contract it was stipulated that he (Briggs) should not have possession of that part till the 1st of January, 1825, “ at which time he believed the five years’ possession of his tenant would expire, and thereby his intention to perfect his title by the statute of limitations would be consummated.” Now, from the plain terms of this statement, it is to be inferred, that at the time of the contract Briggs knew the purpose for which the land in the possession of Brooks was retained, and such is the more probable conclusion from the facts. It is likely that he would require an explanation of the reason why possession of part of the land was retained. If he knew this, he must have known that there was an outstanding title, against which Gillam’s title was to be matured.
I should hold it to be immaterial whether he knew of the claim of Burden, or only of the older grants to Porcher and Harris. In either case Gillam’s title was defective, and Briggs’ making the contract and going into possession under these circumstances, can only be construed into an assent on his part to take the risque of the title. If he knew only of the grant to Porcher, he must have known that there was a chance of Porcher’s having conveyed to some one else. Besides these circumstances, there is the testimony of Barber Hancock, that of James G. Burton, and that of William Gillam, tending to confirm the impression, that Briggs did know of the defect of title at the time he purchased. I feel so much impressed by this *435 testimony, that I could not decide in favor of Briggs on this point, without sending it to be determined by a jury.
But on another ground I find myself compelled to determine against him. In my former decree I expressed the opinion that “ if the party taking possession has no knowledge of the defect at the time, but comes to the knowledge afterwards, I apprehend that if he continues in possession for an unreasonable time, without objecting to the title or offering to abandon the possession or the contract, or insisting on immediate performance, he will be bound to accept. Still more strongly, if he goes on to treat the property as his own, by wasting or altering the situation of it, or offering it for sale. I infer this from the cases of Fleetwood vs. Green, and Margravine of Anspach vs. Noel, before cited. In those cases, the abstract was delivered after the possession taken; but the parties continuing in possession long afterwards, without objection, were held to have waived any defect.” Now, in this case, Briggs, according to his own statement, came to the full knowledge of the defect of title in 1826. The present bill, which is the first proceeding instituted by him to get rid of the contract, was filed in 1832 — after a lapse of six years.
To this it may be replied, that after coming to the knowledge of the defect, he did demand of Gillam a rescission of the contract, and the latter must take the consequences of refusing his first demand. Besides, during a considerable portion of the time Gillam was prosecuting his former suit to obtain performance of the contract, which Briggs resisted, and insisted on his claim to a rescission. I doubt if the mere offer to rescind will do, unless it be followed up by proper legal steps to enforce the claim to rescission within a reasonable time. Shall a party, after having once offered to rescind, be permitted to lie by for an indefinite length of time, using the property as his own, and speculating on the chances of its rising or falling in value ? Then, as to the pendency of the former suit, I expressed my doubts in the decree whether a rescission could be decreed in favor of Briggs on Gillam’s bill, or whether he was not bound to proceed on his part by filing a cross-bill.
*436 But independently of this, I think there was such laches on the part of Briggs as, according to the authority of the decided cases, will preclude him from relief. He came to the knowledge of the defect of title in 1826; it is not particularly stated at what time of the year. He charges, by his bill, that soon after coming to the knowledge of the defect of title, he offered to restore the possession and demanded a rescission of the contract. Gillam denies that any such offer was made until the filing of his former bill, nor have we any evidence of such offer until the coming in of his answer to that bill. Gillam’s former bill was filed on the 23d of August, 1828. .The answer was filed on the 16th of June, 1829, which must have been between two and three years after Briggs was apprised of the defect of title. Now, in the case of the Margravine of Anspach vs. Noel, before referred to, (1 Madd. Rep. 310,) specific performance was decreed, without a reference of title, upon possession for two years after discovery of the defect of title; there having been a correspondence in the mean time, in which no objection was taken to the title. In the case of Fleetwood vs. Green, between three and four years had elapsed. In that case, stress was laid on the circumstance of the defendant’s having treated the property as his own. Are there not circumstances in this case stronger than occurred in those? Briggs treated the property as his own. He cleared for cultivation a very considerable portion of it, and the weight of the testimony is, that he injured it considerably by his methods of cultivation and materially impaired its value. Then the small payments that were made and credited in 1828, amounted to an express affirmance of the contract. Briggs states in his answer to Gillam’s bill, that these credits were for money advanced in 1826, before he knew of the defect of title ; but this is not evidence in his own case. Besides, although the money were advanced in 1826, yet if he agreed to its being credited in 1828, it is the same thing as if the money were then paid. All that we know, however, is that the credit was given in 1828. Then, after his offer to rescind the contract, he in 1828 advertised the land for sale, clearly treating it *437 as his own. The decree of 1830 apprised him of the necessity of proceeding on his part, and put him upon the assertion of his right. The action at law brought by Gillam, was a further call on him to proceed if he intended to do so. He still delayed, till Gillam had recovered judgment at law and was about enforcing execution, and had filed his present bill. Then he files his bill for a rescission. It would be a premium to laches, to aiford him relief after these circumstances.
I have treated the case hitherto as if Gillam were now seeking a specific performance, and I think he would be entitled to it. But the case is certainly stronger against Briggs coming for a rescission on his part. I do not find that a contract of sale has ever been relieved against, on the ground of an outstanding title, while the vendee continues in possession, unless pn the score of fraud. Contracts have often been rescinded on account of mistake ; but not of mistake in relation to an outstanding title, when there has been no eviction of the purchaser. Such is the case of Abbott vs. Allen, 2 Johns. Ch. 519, in which Chancellor Kent refused to relieve against the payment of the purchase money, though an outstanding title was very satisfactorily shown. That was the case of a conveyance executed; but the reasoning will apply to one like the present.
The Chancellor says, (<Can this Court proceed to try the validity of the outstanding claim in the absence of the party in whom it is supposed to reside, or must he be brought into Court against his will, to assert or renounce a title which he never asserted, and perhaps never thought of? I apprehend there is no such practice or doctrine in this Court; and that a previous eviction or trial at law is, as a general rule, indispensable.”
The purchaser’s resort in such cases, must be upon his covenants of seisin or warranty, should he be afterwards evicted. See the cases there cited, and Bumpus vs. Platner, 1 Johns. Ch. 213. With this agrees Westbrook vs. McMillan, 1 Hill, 317. That was a law case, but it was the adoption of an equity doctrine. In the case of Abbott and Allen, as I have said, an outstanding title was proved. But, in this case, I cannot say *438 that Gillam’s title may not be perfectly good. No title has been legally proved in the heirs of Burden. If it had been proved in Burden himself, he may have conveyed to some one else; and the silence of his will with respect to this land, may afford room to conjecture that he had done so. Or, if it is in the heirs of IJorcher, these may have been adults, against whom Gillam’s title has been matured by the statute. I do not say that his title is good ; perhaps the probabilities are against it: but for aught that I can see, it is very improbable that any one will ever be able to establish a title against him at law. Certainly, no case-of fraud has been made out against Gillam.
I have, so far, considered the case as if Briggs were still in possession of the land, and it is, to be decided on the same principles as if he were.
The bill, on the part of Gillam, was filed, first, to render the land specifically liable to the satisfaction of his verdict at law, and to obtain a sale of it; and next, to stay Briggs from committing waste pending the litigation. The land has been sold, and the proceeds, which are not quite sufficient to satisfy the verdict, are in the hands of the Commissioner. A decretal order was made on that bill, “ that the said tract of land be held specifically liable for the payment and satisfaction of the complainant’s said judgment at law, without prejudice to the defendant’s claim to set aside the contract for the land, and subject to the final order and decree on the merits.” I have decided that Briggs is not entitled to a rescission of the contract, and I must regard this as a decree giving Gillam the proceeds of the land. The only question remaining, in relation to that case, respects the costs, and these I think Gillam must pay — I think so, because it appears to me that the suit was unnecessary. Though the legal title had not been conveyed to Briggs, yet if Gillam had caused the land to be levied on and sold under his execution, the purchaser would have had a good title. Both Briggs and himself would have been estopped to deny the purchaser’s title. It is said, there were older judgments against Briggs, which would have claimed the proceeds. But the Court of law exer *439 cises an equitable jurisdiction, in ordering tbe proceeds of executions to be paid over, and this land could never have been held liable to the satisfaction of any other judgment. Then, I am of opinion, Gillam was not entitled to stay waste. He claims to enforce the contract as a valid one, and his claim has been sustained. Briggs must then be considered, in equity, as the absolute owner of the land, entitled to use it or to waste it, as he pleased. As well might any other creditor filé a bill to prevent his debtor from wasting his lands, pending the action at law for the recovery of his debt.
It is ordered and decreed, that the proceeds of the land in the hands of the Commissioner be paid over to James Gillam, the complainant in the first case stated, and that the said Gillam pay the costs of that suit, and that the bill of the complainant, Briggs, be dismissed with costs.
Note.—Vide Whitworth vs. Stuckey, 1 Rich. Eq. 404, and Thompson vs. Dulles, Ms. Charleston, January, 1853, in which these cases are referred to. R.