Curia, per Harper, Ch.
In the circuit decree I have re-fered to the case of Gillam vs. Briggs, decided by myself at Newberry. I find that there were two cases of Gillam vs. Briggs and Briggs vs. Gillam, in which opinions were expressed on the same or an analogous subject. In the former of these cases, I considered chiefly the question whether a party going into the possession of land, under an executory contract to purchase, with a knowledge of the vendor’s title, and without any stipulation for the maturing or perfecting the title before the execution of the contract, or the payment of the money, will be bound to accept such title as the vendor is able to make. The authorities seemed to me very full and satisfactory, admitting little question; nor, so far as I know, was the conclusion questioned. But if this be the law, then, much more strongly, when a party has gone into possession under a conveyance executed, with a similar knowledge of the title, be cannot sustain a bill for the purpose of rescinding it. The party defending is always in a better position in this court than the party prosecuting. Such an absurdity in the law can hardly be supposed, as that a party should be compelled, by the court, to execute a contract, when he might sustain his bill to rescind it, if it were already executed.
*408 In the second of the cases refered to, I considered another question, which was regarded as of much more doubtful character. Whether a party who goes into possession under such contract to purchase, without knowledge of the title, and who after-wards coming to the knowledge, stiil continues in possession for a considerable time, using the property as his own, will not also be compelled to accept such title as the vendor is able to make. I decided that he was bound to accept such title, chiefly on the authority of the cases of the Margravine, of Anspach vs. Noel, 1 Madd. Rep. 313, and Fleetwood vs. Green, 15 Ves. 594. But I do not perceive that this has any application to the present case.
The bill in the second of the cases, was for the rescission of the contract to purchase, and involved the question which is now before us. In the opinion it is said. “I have treated the case hitherto as if Gillam were now seeking a specific performance, and I think he would be entitled to it. But the case is certainly stronger against Briggs coming for a rescission on his part. I do not find that a contract of sale has ever been relieved against on the ground of an outstanding title, while the vendee continues in possession, unless on the score of fraud. Contracts have been rescinded on the ground of mistake, but not on the' ground of mistake in relation to an outstanding title, when there has been no eviction of the purchaser. Such is the case of Abbott vs. Allen, 2 Johns. Ch. 519, in which Chancellor Kent l'efused to relieve against the payment of the purchase money, though an outstanding title was very satisfactorily shewn. ’That was the case of conveyance executed, but the reasoning will apply to one like the present. The Chancellor says, ‘can this court proceed to-try the validity of the outstanding claim in the absence of the party in whom it is supposed to reside, or must he be brought into court against his will, to assert or renounce a title which he never asserted, and perhaps never thought of'? I apprehend there is no such practice or doctrine in this court; and that a previous eviction or trial at law is, as a general rule, indispensable.’ ‘The purchaser’s resort in such cases must be upon his covenants of seisin or of warranty, should he be afterwards evicted.’ See the cases there cited, and Bumpus vs. Platner, 1 Johns. Ch. 213. With this agrees Westbrook vs. McMillan, 1 Hill, 317. That was a law case, but it was the adoption an equity doctrine.”
I beg leave to throw out some other considerations. Nothing would tend more to the promotion of fraud and litigation than *409 the establishment of a contrary rule. In the frequent fluctuations of the commercial prosperity of the country — fluctuations to which our country seems more liable than any other — there is a corresponding fluctuation in the value of property. He who purchases land at a high price, will be tempted, when there follows a great fall of value, to discover and bring forward some claim which may have the effect of ridding him of his bargain. But this is a betrayal of his vendor’s title, and against good faith. The case has occurred of a vendee who, upon such a fall of property, has been at great expense of time, labor and money, in seeking information from individuals and searching public offices, in order to ferret out a paramount title, which there was not the remotest probability would ever be prosecuted, which did not appear to be known to the person in whom it was vested, and which there was hadrly a probability that he would prosecute successfully even if he knew it. This was scarcely less than fraud ; yet according to the doctrine contended for, relief ought to have been granted in such a case, for there was clearly an outstanding title in some one.
The present bill contemplates that the court shall determine on the outstanding title by a reference, without bringing the parties alleged to have title, before the court. Yet, in general, the party having title is the only party competent to litigate it. This court has no authority to try titles, even if the proper parties were before it. Absurd consequences would follow, if the court should determine the validity of an outstanding claim, and the alleged claimant should never after prosecute it, or should prosecute it unsuccessfully. Then, as said by Chancellor Kent, what right have you to bring into court a party who has never pretended or asserted any claim, in order to compel him now to assert it, or to renounce it forever % As I have observéd, it is in bad faith towards the vendor, to stir up a claimant against his title.
It was strongly urged that relief ought to be granted in this court, because it will not be afforded in any other. The law courts, it is said, will not grant,an abatement of price in such case, in a suit for the purchase money. 1 have no doubt that the decisions of the law courts were perfectly correct; but, with proper deference, I think the dicta of some of the judges- — that relief will be afforded in equity — are founded on a mistaken view. Belief is to be afforded in no court, because there is no grievance. When the grievance is suffered, relief will be afforded.
*? It is within the very letter and meaning of the vendee’s contract, that he shall not be entitled to any such relief. The vendor warrants the title to him — and this warranty alone it is which gives him á claim to any relief. What does this warranty mean'/ It means, that if the vendee’s title should at any time be assailed by a proceeding at law, he will defend it, or make good the loss if he should fail to defend it successfully. It is hardly necessary to refer to Coke, or Blackstone, or Bacon, or Comyn, to shew that this is the true meaning of the word. It is said to be great hardship that he should be obliged to wait with this doubt hanging over his title, or should be unable to sell. It may be his misfortune, but if it be according to the terms of his contract, he has no right to complain.
I have said that any contract may be rescinded on the score of fraud; and such is the case of Edwards vs. McLeary, Coop. Cases in Ch. 318, confirmed on appeal, 2 Swanst. 287. Fraud is said to be charged in this case. I have no doubt that if the vendor knew of an outstanding title and concealed it from the vendee, this would amount to a fraud. But if the vendee knew of the defect, there could, of course, be no fraud. The wrong and hardship would be inflicted on the vendor, if relief could be granted in such a case — the vendee having taken the title with his eyes open ; having, in effect, stipulated to take the risk of being evicted and then to rely on his covenant of warranty, and then calling in a claimant to defeat his title. But there are, perhaps, cases in which the vendee will be presumed to know the title. The general rule is, that if a purchaser cannot make out a title, without coming to a knowledge of the defect, he will be presumed to know. It is not usual among us to furnish abstracts of title; but it is usual to examine the vendor’s title deeds, of to require information of his claim of title. It may not be necessary to conclude any thing on this subject. The case would, perhaps, be remanded for the purpose of hearing evidence on the subject of fraud, but that we are with the defendant on the limitation in the will of John Baxter Fraser. I may remark, however, that the complainant could not have examined the title of the defendant Stuckey, without coming to a knowledge of the will of John Baxter Fraser. The conveyance to him refers to the title of Thomas Fraser, one of the sons who took under the will of John Baxter Fraser. The word fraud is not used in the bill. It charges that defendant “ knew the incumbrance arising from the wilt of John Baxter Fraser, *411 and studiously and deliberately concealed such important information.” He also charges that when he purchased he knew of no incumbrance or defect of title. This seems somewhat evasive. He does not state that he did not know of the existence and terms of John Baxter Fraser’s will; and if he knew of this, it is immaterial that he put a wrong construction upon it. Or if defendant represented to him, in the strongest manner, that his title was good, only expressing his own opinion or conviction on the construction of the will, this would be no fraud. If, indeed, he had represented to him that he had taken the opinion of counsel, and the representation were false, this might amount to fraud. But, as I have said, it is not necessary to conclude any thing on this part of the case. Then, with respect to the limitation in the will of John Baxter Fraser. There is no question but that if there had been no more in the will than a gift to a son “for and during the term of his natural life, and at his death to the lawful issue of his body,” this would have given an estate tail or fee conditional, under the rule in Shelly's case. The question is upon the effect of the limitation over, “ if he should die without leaving issue of his body living at the time of his death.” Does this, according to the established rule of law, sufficiently indicate the testator’s intention, that the first taker should be restricted to a life estate, and the issue take as purchasers 1 If the limitation over had been simply on the event of not leaving issue, there is no doubt that this, as applied to real estate, or at all events after an estate tail, would be held to imply an indefinite failure of issue. The case of Barnfield vs. Wetton, 2 B. & P. 324, seems to be one in which such a limitation, after a devise in fee, was held to be a good executory devise. So it was held by our own court, in the case of Mazyck vs. Vanderhorst, Bail. Eq. 48, and such is the familiar doctrine of the English Courts. But this seems to be equivalent to leaving issue living at the time of the death. So it is always construed when applied to personal estate.
The case of Pearson vs. Wright, Amb. 358, Eden 119, quoted on the part of the defendant, is rather against him. It seems to be assumed in the case, that if such had been the terms of the limitation, they would have had the effect of restricting the first taker to a life estate. But the case is decided on other words in the will, plainly importing an indefinite failure of issue, and the formor words were held not to apply to the limitation over. There is, therefore, no decision on the effect of these *412 words so applied. The case of Sparrow vs. Shaw, 3 Bro. Parl. Ca. 120, seems to be sufficiently in point. The case was first heard on appeal from the great sessions in the court of King’s Bench, and,was twice argued in that court. (Reported as Shaw vs. Weigh, Stra. 798.) The material words of the will in that case were — to the testator’s sisters during their natural lives, “ and if either of my said sisters happen to die, leaving issue or issues of her or their bodies, lawfully begotten” (fee., then in trust for such issue ; “ and *if it shall happen that both my said sisters shall die without issue, as aforesaid,” which must mean issue living at the time of the death, then over. On the first argument in the King’s Bench, the court expressed the opinion that the sisters took an estate tail. On the second argument, however, the court changed its opinion, and on some particular circumstance of the will, determined that the sisters were restricted to a life estate, and reversed the judgment of the court of Great Sessions. On the final appeal to the House of Lords, however, the judgment of the King’s Bench was reversed, and the sisters held to be entitled to an estate tail. The case of Richards vs. Lady Bergavenny, 2 Vern. 324, seems equivalent to this. That was a devise to Lady B. for life, and to such heir of her body as should be living at the time of her death, and in default of such, that is, of an heir of her body, living at the time of her death — over. This was held an estate tail.
The words heirs of the body and issue are generally equivalent in a will, though the former are regaided as the stronger and more technical words. The word heir of the body, in the singular number, has been thought a more appropriate word of purchase than heirs of the body. There can be no doubt that under the words of the will, the heir would have taken by purchase, if they had been applied to personal estate.
These cases are certainly strengthened by that of Doe ex dem. Gilman vs. Elvey, 4 East, 313. In that case, the testator devised to his “ son, Henry Gilman, and to the issue of his body lawfully begotten, his, her, or their heirs, equally to be divided, if more than one ;• and if my said son, Henry Gilman, shall have no lawfal issue of his body living at the time of his decease, then,” (fee. Lord Ellenborough, all the other Judges con-cuning, expressed the opinion that the issue took as tenants in common, that is, by purchase, on the effect of the words, “equally to be divided between them,” and the limitation to “ his, her or their heirs but he does not resort to the limitation over, in *413 the event of the son’s not leaving issue living at the time of his death, to confirm his conclusion.
The case of Forth vs. Chapman, 1 P. Wins. 663, was the first in which a distinction was made as to the same words, when applied to real or personal estate. In that casé, both real and personal estate were given indefinitely, with a limitation over in the event of dying without leaving issue, As applied to the personal estate, the words were held to mean “ issue living at the death of the first taker,” because such is the proper and natural meaning of the words leaving no issue; and it is only on the ground that such is the meaning of the words, that the limitation over is supported, and the indefinite bequest gave the absolute property in the personalty. But with respect to the real estate, there being no words of inheritance or perpetuity, the first taker could only have had an estate for life, and the remainder, in the event of the tenant for life’s dying without leaving issue, would have been undisposed of, unless the words had been construed to import an indefinite failure of issue, so as to enlarge his estate to an estate tail by implication. This is called a reason of necessity. But the very same necessity would have existed, and in the same degree, if the terms of the limitation over had been carried out more explicitly — leaving issue living at the time of his death. Following this case, the same meaning has been attributed to the words in every instauce of their being applied to real estate — or perhaps, as I have said, after an estate tail — and such is the established law.
The decree is affirmed.
Johnston and Dunkin, CC. concurred.