1817.

ABBOTT
v.
ALLEN.

ABBOTT *against* ALLEN, executor of ALLEN.

A purchaser of land, who has paid part of the purchase money, and given a bond and mortgage for the residue, and is in the undisturbed possession, will not be relieved against the payment of the bond, or proceedings on the mortgage, on the mere ground of a defect of title, there being no allegation of fraud in the sale, nor any eviction; but must seek his remedy at law, on the covenants in his deed.

*August* 12th.

THE bill stated, that, in the year 1805, the testator offered to sell to the plaintiff a farm, which he then possessed, at a fair price; and represented that he was the true and rightful owner of it, and would give, or procure to the plaintiff, a perfect title; that, giving credit to the testator, the plaintiff, on the 18th of *April*, 1805, agreed to purchase the farm for 2,500 dollars; 1,000 dollars to be paid on receiving the deed, and the residue to be secured by bond and mortgage; that the testator was to give the plaintiff a deed in fee, with full covenants. That the testator, accordingly, with his sons, *Charles Allen*, and the defendant *Alexander Allen, jun.*, executed a deed to the plaintiff, of that date, in fee, with covenants of seisin in fee, and a right to convey, and *for quiet enjoyment, and against encumbrances, and with a general warranty. That his sons were made parties to the deed, at the instance of the testator, and under pretence that they had some right and interest in the farm. That the plaintiff paid the testator 1,000 dollars, and gave a bond and mortgage for the residue of the purchase money; that the plaintiff went into possession, at the execution of the deed, and has occupied the land since, and made valuable improvements thereon. That he paid the interest on the bond down to *June*, 1813, and paid 300 dollars towards the principal, leaving 1,200 dollars for principal, due on the bond, and interest, from the first of *June*, 1813. That his title is now deemed questionable, so that he cannot raise money on the security of the land, or sell it. That the testator could not give the plaintiff any particular explanation about the title; that he has made diligent inquiries concerning the title, and finds that the farm was owned by *Jeremiah Sabin*, who died in possession, in 1790, leaving ten children by his first wife, and one child by his second wife; that by his will, dated 22d of *February*, 1771, he directed his executors to sell so much of his land as should be requisite to pay his debts; and he gave his wife one third of his real estate, and then divided his estate among all his ten children, and appointed his wife

[* 520 ]

402

and one son his executors. That his wife died, in his life-time, after his will, and he married again; and by his second wife had one child, now living, who married the defendant. That this second marriage and child is deemed a revocation of this will. That his heirs, in 1791, set off the said farm to his widow (the second wife) for her dower, and she sold her right, afterwards, to the testator, or father of the defendant; that when the testator and his two sons conveyed to the plaintiff, they had no title, except the conveyance from the widow, and a deed from the surviving executor of *Jeremiah Sabin*, deceased, and a quit-claim from one other of the heirs. That the title of the plaintiff, by the implied revocation *of the will is insecure, as to the shares of all the children, except two; that the defendant is now suing, as plaintiff, on the bond, and advertising a sale of the premises under a power in the mortgage.

The plaintiff prayed that the defendant might perfect the title, or pay the plaintiff for the deficiency; and be enjoined, in the mean time, from all proceedings on the bond and mortgage. An injunction was accordingly granted.

*J. Talmadge*, for the defendant, now moved to dissolve the injunction, on the facts stated in the bill, and relied on the case of *Bumpus* v. *Platner*, (1 *Johns. Ch. Rep.* 213.)

*Emott*, contra, relied on the ground of a failure of consideration, and a purchase under a representation which was not true; and he contended that chancery would grant relief on failure of consideration before eviction, and though possession passed and continued in the plaintiff, provided the case came within the terms of the covenants in the deed. He cited *Co. Litt.* 384. *a.* note. 1 *Fonb.* 366. *Sugden's Law of Vendors,* 316. 1 *Vesey,* 88. 3 *P. Wms.* 307. 18 *Viner,* 113. pl. 9, 10.

THE CHANCELLOR. This case comes within the general doctrine declared in *Bumpus* v. *Platner*, (1 *Johns. Ch. Rep.* 213—218.) that a purchaser of land, who is in possession, cannot have relief here against his contract to pay, on the mere ground of defect of title, without a previous eviction. But, without resting on the opinion there delivered, I have again examined the question, inasmuch as the doctrine in that case was doubted by the learned counsel who opposed this motion.

If there be no fraud in the case, the purchaser must resort to his covenants, if he apprehends a failure or defect of title, and wishes relief before eviction. This is not the appropri-

Margin notes:

1817.

ABBOTT
v.
ALLEN.

[ *521 ]

ate tribunal for the trial of titles to land. It *would lead to the greatest inconvenience, and perhaps abuse, if a purchaser in the actual enjoyment of land, and when no third person asserts, or takes any measures to assert, a hostile claim, can be permitted, on suggestion of a defect or failure of title, and on the principle of *quia timet*, to stop the payment of the purchase money, and of all proceedings at law to recover it. Can this Court proceed to try the validity of the outstanding claim, in the absence of the party in whom it is supposed to reside, or must he be brought into Court against his will, to assert or renounce a title which he never asserted, and, perhaps, never thought of? I apprehend there is no such practice or doctrine in this Court; and that a previous eviction or trial at law is, as a general rule, indispensable. Perhaps an outstanding encumbrance, either admitted by the party, or shown by the record, may form an exception, in cases of covenant against encumbrance. Some *dicta* in the books (see *Serjeant Maynard's* case, 2 *Freeman*, 1. and 1 *Vesey*, 88.) seem to look to that point; but I have formed no opinion respecting it. The case of fraud is an exception; and it seems to be admitted by Mr. *Butler*, (note 332 to *Co. Litt.* 384. *a.*) that if the purchaser was imposed on, by any intentional misrepresentation or concealment, he may have redress here, in addition to and beyond his covenants. The late case of *Edwards* v. *M'Leay*, (*Cooper's Eq. Rep.* 308.) is to this point. The purchaser, in that case, *before* any eviction was had or threatened, succeeded in a bill to set aside the conveyance, and for a return of the purchase money ; but it was expressly upon the ground of fraud and imposition charged and proved ; and the master of the rolls, in answer to the objection that the plaintiff was premature, inasmuch as he had not yet been evicted, and might perhaps never be, put the case on the ground of the fraud.

There is no fraud charged in this case, and the bill has no such ground to support it.

[ * 523 ]

*If there be no fraud, and no covenants taken to secure the title, the purchaser has no remedy for his money, even on a failure of title. This is the settled rule at law ; (*Frost* v. *Raymond*, 2 *Caines*, 188.) and I apprehend that the same rule prevails in equity. (1 *Fonb.* 366. note. *Urmston* v. *Pate*, cited in *Sugden's Law of Vendors*, 3d ed. 346, 347. and in 4 *Cruise's Dig.* 90. and in *Cooper's Eq. Rep.* 311.) In the case of *Hiern* v. *Mill*, (13 *Vesey*, 114.) the lord chancellor observed, that possession of land was no criterion of title, and that no person, in his senses, would take an offer of a purchase from a man, merely because he stood upon the ground. The purchaser must look to his title ;

404

and if he did not, it would be *crassa negligentia*. I know of no case in which this Court has relieved the purchaser where there was no fraud and no eviction; all the cases that I have looked into proceed on the ground of a failure of the title duly ascertained. Thus, in the imperfect note of the case of *Picketon* v. *Litecote*, 22 *Eliz.* cited in 21 *Viner*, 541. pl. 1., and sometimes referred to, process was awarded by chancery to have the purchase money refunded; but in that case it appeared by the defendant's answer, *that the plaintiff could not enjoy* the reversion of the copyhold which he had purchased; and in the *anonymous* case, in 2 *Ch. Cas.* 19. there was a previous eviction under a paramount title; but the authority of that case is questioned, in a note to the case itself, and in the subsequent books, which refer to it; not, indeed, in respect to the necessity of a previous eviction, which the case may be considered as assuming, but on the ground that there was no covenant against paramount titles, and that the purchaser, as to them, took the conveyance at his peril. In *Serjeant Maynard's* case, (2 *Freeman's Rep.* 1.) referred to in the passage cited by the counsel from *Viner*, the lord clancellor said, that there being no fraud or surprise in the case, if the party was not aided by his covenants, he would not be helped in equity; and yet the purchase money had \*been paid, and a third person had made title. There are some loose *dicta*, (for which I presume the case was referred to,) but they are without any fulness of illustration, and want that precision which is requisite to give much force to them. The decision in the case is strong against the pretension of the present plaintiff; for though a third person had made title, and the plaintiff had paid his purchase money, yet, in consequence of a positive agreement with the vendor, he was rigorously denied any relief, and left to his remedy, if any, at law. So again, in *Bingham* v. *Bingham*, (1 *Vesey*, 126.) on a bill to have purchase money refunded on a mistake in title, the mistake had appeared *in an ejectment at law*. It appears to me that this principle pervades the cases.

The only plausible argument for the injunction is, that as the plaintiff has covenants to secure his title, the interference of this Court is necessary to prevent circuity of action, and that the plaintiff ought not to be compelled to pay the purchase money, when, by a suit on his covenants, he might, almost concurrently, be enabled to recover it back again. This argument would apply to every case of mutual and independent covenants, and would prove too much; but the proper answer here is, that to sustain the injunction would be assuming the fact of a failure of title before eviction,

1817.

ABBOTT
v.
ALLEN.

[ \* 524 ]

**1817.**

ABBOTT
v.
ALLEN.

or trial at law; and which this Court, as not possessing any direct jurisdiction over legal titles, is not bound or authorized to assume. This Court may, perhaps, try title to land when it arises incidentally; but it is understood not to be within its province, when the case depends on a simple legal title, and is brought up directly by the bill. The power is only to be exercised in difficult and complicated cases, affording peculiar grounds for equitable interference. This was the doctrine laid down by the respondent's counsel, on appeal, in the case of *Welby* v. *Rutland*, (6 *Bro. P. C.* 575.) and it appears to have been sanctioned by the Court. The rule

[ *525 ]

is now so understood, according *to a late treatise *on the principles and practice of the Court of Chancery,* (1 *Maddock's Chan.* 135.) a work of merit and utility. This point was also discussed much at large, and emphatically laid down by Baron *Wood,* and not denied by the other barons, in the case of the *Attorney-General to the Prince of Wales* v. *St. Aubin,* (1 *Wightwick's Exch. Rep.* 184 to 238.) The principle on which set-offs are allowed, is also inapplicable to such a case, where the demand of the one party is certain, and that of the other is not known, and cannot be ascertained, until the outstanding title, suggested to exist, has been established at law.

The plaintiff has the means of bringing the legal title to a test, whenever he pleases, by an action at law on his covenant of seisin.

It is unnecessary for me to say whether or not the injunction ought to stand, if there had been a previous eviction, or if there was an existing encumbrance which appeared to admit of no dispute. I give no opinion on either of those points, nor on a view of the case, if founded on other and special circumstances. It would be hazardous to undertake to define the limits of equitable relief, in other supposable cases of the like kind. But in this case, where the plaintiff now is, and for twelve years past has been, in the peaceable possession of the land, and when no adverse title is put forward by any person claiming it, nor any adverse proceeding threatened; and when we have nothing but defects of title speculatively set forth, and when the plaintiff has full covenants, to one of which he can immediately resort in the Courts of law, if the vendor was not seised, I feel myself bound to say, that the defendant's remedy at law, for the residue of his purchase money, ought not to be stayed, and that the injunction must be dissolved.

*Injunction dissolved.*