## GRIFFITH and others *vs.* KEMPSHALL and others.

Lands were offered for sale at auction. At the time of the auction, the sellers said that the title was good, and that a clear and unincumbered title would be given. The complainants then bid off several lots, and afterwards took deeds thereof from the sellers, and executed their mortgages for the purchase money, and made valuable erections upon the lots. Upon discovering afterwards that there were elder incumbrances, they filed a bill to restrain the collection of the mortgages, until the incumbrances should be removed.—Held, that inasmuch as the purchasers had not been evicted or disturbed by the incumbrances, the court would grant no relief, but would leave the purchasers to their remedy upon the covenants.—Held, also, that the representations made at the auction sale, were merged in the covenants contained in the subsequently executed deeds.

THE bill states that in August, 1839, the defendants—assuming to have a joint interest or to be joint owners, and seized in fee of certain premises in the city of Rochester, consisting of certain mill lots and a mill yard—made a survey and plot of the whole, and divided the whole into fifteen subdivision lots ; which lots, in pursuance of a previous notice, they offered for sale at auction.

The auctioneer, at the auction sale, exhibited the map of the subdivisions, and proclaimed that the title to the said lot was perfect and free from all incumbrances, and that Mr. Carroll, one of the proprietors, would state the particulars. When Carroll stated the same facts, and it having been suggested that there was a mortgage upon part of the premises, Mr. Carroll farther assured the persons present, that arrangements were making which would remove from the premises the incumbrance of the said mortgage, and that a clear and unincumbered title to the lots

sold, would then be given to the purchasers of the lots. At this and a subsequent auction, the complainants, nine in number, purchased several if not all the said subdivision lots, at various prices—each complainant purchasing one or more lots; but the purchases of the complainants were several and separate, and not joint, as each complainant purchased in severalty.

After the purchases and payment of the amounts required by the terms of the auction, the defendants executed to the several complainants several deeds for the several lots purchased by them, according to their bids and purchases. Most of these deeds contained a general covenant of warranty, but one of them did not. The complainants, upon receiving these deeds, executed several mortgages upon the several lots by them respectively purchased, to the defendants or others, to secure the payment of the purchase money in several yearly installments. The complainants, after their purchases thus made, entered into possession of their respective purchases, and severally made valuable erections upon the property or lots so purchased. The bonds and mortgages were deposited with the depository of the defendants. The bill farther states that the complainant's, relying upon the representations made at the auction sales, did not make any searches as to title or incumbrances, but accepted their respective deeds and executed their respective mortgages; after which, and after the erection of their buildings, they did make search in the proper offices, and found large incumbrances there on record, which were a lien upon various portions of the said subdivision lots; and that, though some of said incumbrances are paid, a large

part are unpaid and in full force, and resting upon said premises or parts thereof, as liens prior to the deeds to the complainants, which incumbrances they believe were known to the defendants at the time of the said sales.   The complainants pray that the defendants may remove or cancel such incumbrances, or indemnify the complainants against the damages which they may sustain by reason thereof, and to restrain the defendants from collecting the amounts now due upon their several mortgages, until such incumbrances are removed or discharged.  The complainants all join in the same bill.

April, 1841.

Griffith and others

v.

Kempshall and others.

The defendants put in a demurrer to this bill,

1.  For general want of equity ;

2.  For multifariousness.

*S. Mathews*, for the demurrer, makes the following points :

1.  The bill contains no matter of equity.  It is filed by the purchaser, who has received a conveyance with covenants, to restrain the collection of the purchase money secured by mortgage, until incumbrances are removed.   This is never allowed before an eviction, unless fraud is alleged ; and in the latter case the fraud must be distinctly alleged or put in issue.

2,  The bill is multifarious.   It is founded upon several distinct and independent contracts, in which the plaintiffs have no joint interest; and the subject matter of the suit consists of several distinct parcels of land in which the plaintiffs have no joint interest ; but their interests are separate and distinct.

*M. Chapin* and *O. Hastings,* for complainants. The demurrer admits the truth of the statements in

April, 1841.

Griffith and others
v.
Kempshall and others.

the bill; and those statements show that the defendants made false and fraudulent representations, upon the faith of which the complainants purchased and took their titles, and made their improvements. It is true, it is not denominated as fraud in the bill, but the facts speak for themselves, and show conclusively that there were false representations which the defendants knew to be false, and upon which the complainants relied. If the defendants had made no such representations as they did make, the purchasers would have examined for themselves; but they relied upon the defendant's representations.

The bill is not multifarious. The rules upon this subject in our own courts, are somewhat more liberal than rules to be extracted from English cases. These rules may be found in Brinkerhoff vs. Brown, 6 Johns. Chan. Rep. 139; Fellows vs. Fellows, 4 Cowen, 697; Reed vs. Gifford, 1 Hopkins' Rep. 419; Boyd vs. Hoyt, 5 Paige, 78.

THE VICE CHANCELLOR. The demurrer in this case presents two questions, one upon the merits, the other upon the pleadings—the last involving the question whether there is a proper joinder of parties or causes of action. The decision of the first question is of very considerable importance, not only in determining this case, but as bearing upon many others which are presented to the consideration of this court. The truth of the statements in the bill is admitted by the demurrer. The facts thus stated and admitted, are, shortly, that the complainants purchased at auction certain lands of the defendants, upon the representation by the defendants at the sale, that the lands were free from incumbrance, and that a clear and

unincumbered title should be given for the lands so purchased. Upon the faith of this representation, the complainants purchased, or by bidding agreed to purchase—upon the same faith they took their deeds and executed their mortgages for the payment of the purchase money—upon the same faith they made valuable erections upon the premises so purchased; and it was not till after all this, that they ascertained that there was any prior incumbrance upon the premises. It is also to be assumed from the bill, that the defendants knew, at the time they made such representations, that there were incumbrances upon the property. Upon the case thus stated, can the complainants decline to pay their mortgages for the purchase money, until these incumbrances are removed? It seemed to be conceded upon the argument, that they could not, unless there was fraud in the sale. It is alleged that there was fraud in making such false representations, knowing them at the time to be false. In equity, fraud will vitiate any contract; but fraud has a legal as well as a moral definition. If one represents that a tract of land contains a valuable mine, and induces another to purchase by means of such representation, and the fact turns out not to agree with such representation, it is a fraud which will set aside the contract. If the seller gives his opinion to a purchaser of the value of the land about to be sold, both having equal opportunities of judgment, and it turns out that the opinion of the seller is erroneous, the purchaser has no relief, whether the seller was honest or dishonest in his opinion. The purchaser is presumed to exercise his judgment in purchasing, as well as the seller his judgment in selling. They meet upon equal grounds.

As a general rule, representations as to facts which are equally open to examination and inquiry by both parties, will not be relieved against, if the representations prove not to be true, unless there is a peculiar trust and confidence placed by one party in the other, which would furnish ground of relief. (1 Story's Equity, 206.) In the purchase of real estate, as a general practice, the purchaser makes his own examinations and inquiries as to the validity of title and incumbrances. The public records give him the opportunity of making full examination as to such facts, and satisfactorily inform himself of the state of the title. He can pursue this course without relying upon the representations of the seller, or he can protect himself by proper covenants in the conveyance from the seller. Prudent purchasers generally take both precautions. In this case, the sale was at public auction, pursuant to previous notice. It may perhaps be fairly presumed, that the company casually collected at such auction, were ignorant of the state of the title to the lands offered for sale. They could hardly be expected, preliminary to bidding, to have made searches for themselves, as to the title. To. obviate any hesitation on this ground, on the part of the bidders, the defendants, the sellers, by one of their number, and by the auctioneer employed by them, declared, according to the bill, that a clear and unincumbered title to the lots sold would be given to those who might become purchasers. Upon the faith of this, the bids were made. What is the amount of this declaration of the sellers? Unquestionably, that the persons so bidding should have a clear and unincumbered title; and this assurance could be enforced by any of the purchasers at such

sale, before taking their deeds. The deeds were not of course ready at the day of the sale. The purcha- ser, under this assurance, would have or could claim time to examine into the state of the title. They could not be compelled to complete the purchase, until such time was given them. If, upon such examination, they ascertained that the title was incumbered or invalid, they might abandon their purchases, because the assurance held out at the sale was not sustained by the fact. Or, the purchasers might, if they chose, instead of examining into the title, take their deeds, protecting themselves by proper covenants as to title and against incumbrances. They have chosen to take the latter course. By so doing, I apprehend, the assurance made at the sale is merged in the covenants contained in the deeds. The execution and acceptance of the deeds, is the completion of the executory contracts made by the bidding at the auction, and the terms of that executory contract cannot now be inquired into, unless there was fraud in the representations so made. It seems to me that the representations made at the sale were nothing more than this, that the title was clear and unincumbered; and if it did not prove so, the bidding at the sale should not amount to a contract. It was for the purchasers, after the sale and before taking their deeds, to ascertain for themselves whether this was so—whether the title was such as would be satisfactory to them; or, in other words, whether they were willing to take the deeds and consider the contract complete and perfect. They have chosen to consider the contract complete and perfect, by the acceptance of deeds without inquiry or investigation, guarding themselves by covenants from the grantors.

73

April, 1841.

Griffith and others

v.

Kempshall and others.

They have thought it proper so to do, and execute their mortgages for the purchase money, and, farther, to make valuable erections upon the premises so purchased. It is true the bill charges that they did all this, relying upon the truth of the representations made by the sellers. I cannot think this allegation will aid the complainants. They should not have relied upon such representations. They had abundant means and opportunities to ascertain for themselves the truth of the representations; and in my opinion, these assurances were given for the purpose of enabling the purchasers so to do. They did not choose to avail themselves of such means. They have been negligent, and this court will hardly feel itself called upon to repair, by its decree, their want of diligence and care of their own interests and rights.

The question here presented, will come up in many shapes, both in bills to restrain the collection of mortgages given where there were elder incumbrances, and in defences to bills for the foreclosure of such mortgages. There are not many decided cases bearing upon this question, in our own courts. In the case of Abbott vs. Allen, (2 Johns. Ch. Rep. 519,) it is decided that a purchaser of land who has paid part of the purchase money and given a bond and mortgage for the residue, and is in undisturbed possession, will not be relieved against the payment of the bond or proceedings on the mortgage, on the mere ground of defect of title—there being no allegation of fraud in the sale, nor any eviction—but the purchaser must seek his remedy at law on the covenants in his deed. This case refers to Bumpas vs. Platner. (1 Johns. Chan. Rep. 213.) In the principal case of Abbott vs. Allen, Chancellor Kent, with

his usual fulness of research, examines all the cases
bearing upon the point, and comes to the conclusion
that where there is no fraud, if the title fails or proves
to be incumbered, the purchaser must rely upon the
covenants in his deed, and can have no relief in this
court against the mortgage. In that case, however,
there were full covenants in the deed. In this there
is only the general covenant of warranty. In the
case of Rogers vs. Salmon and others, decided by
the present Chancellor 25th January last, as repor-
ted in the supplement to the Saratoga Sentinel, the
decision was placed upon the ground that the vendor
had not fulfilled the promises made to the vendee in
relation to future improvements, which future im-
provements were the inducement to the purchase.
That case does not cover the point presented by this.
The case of Westervelt vs. Matheson, decided by
the Assistant Vice Chancellor of the 1st circuit, (1
Hoffman's Rep. 37,) was a case of specific perfor-
mance. That decides merely the point, that if a pur-
chaser buys for a sum agreed upon as the full balm
of the property by the appreciation of both parties,
where there is no covenant, the purchaser has a right
to have incumbrances discharged out of the purchase
money. That was a decision upon an executory
contract. Here, the contract is executed by the de-
livery and acceptance of deeds; and thus, the cases
are not parallel. Here, there is no eviction under
the incumbrances or any of them. There is no state-
ment that any effort is making to enforce them. In-
deed, the incumbrances themselves are not definitely
and distinctly stated. We do not know the amount
of them, the nature of them, or upon what specific
portions of the premises they are a lien. But I place

this all out of view. If they were stated ever so clearly and specifically, I must, under the views I entertain of this case, sustain the demurrer. The complainants have not made such a case that I can restrain the defendants from collecting their mortgages. They seem to me, by their own showing, to have waived the force and effect of the representations made at the sale, by accepting deeds.

This will render it unnecessary to examine the other point presented by the demurrer, which, though important, is more technical, and less applicable to the various cases which arise in this court.

The demurrer is allowed, with costs.