# LEE SUPERIOR COURT,

### June 13th, 1842.

---

## AT CHAMBERS—June 13th, 1842.

### Jared B. Roberts, Burch M. Roberts, and William Janes, vs. Washington Woolbright.

*Bill for Discovery, Relief and Injunction. Motion to dissolve the Injunction upon the coming in of the answer.*

1. Equity will not relieve before eviction, by rescinding a contract for the purchase of lands, on the ground of a defective title. It may be that the outstanding title might never be urged.

2. A complainant coming into Chancery, to ask it to rescind a contract for the sale of land, must shew that he has used ordinary diligence in investigating the title.

This bill charges, that on the 16th day of December, 1839, the complainants, *Jared B. Roberts* and *Burch M. Roberts*, purchased from *Woolbright*, the defendant, three lots of land, in the second district of Baker County, viz. Thirty-nine, Forty and Forty-one, for which, with *William Janes* as their security, they gave their promissory notes for the sum of Seven thousand Five hundred dollars, payable as follows : The first note, for one thousand dollars, on the first day of January, 1840; the second, for 2166 66 dolls., on the first day of Jan. 1841; the third, for 2166 66 dolls., on the first day of Jan. 1842; and the fourth, for 2166 66 dolls., on the first day of January, 1843. That they received from the defendant his warranty and to the aforesaid lots of land, and went immediately into the possession of the same. That the complainants *Roberts* have paid the first note, and all to a small balance of some three hundred dollars upon the second, which is in execution—that suit is now pending in the Superior Court of said County of Lee, upon the third note, and that the fourth note is still in the possession of the defendant—that at the time of purchasing the lands aforesaid, the

[Roberts, Roberts & Janes vs. Woolbright.]

complainants were induced to do so, upon the statements of the defendant that his titles were full, good and indisputable, and that such titles as he could make, would be valid and unincumbered fee-simple titles—That since they purchased, they have discovered that the defendant had no title to lot Thirty-nine, other than as trustee for his wife—which lot has been conveyed to him by *Benjamin Rector*, the father of defendant's wife, for the sole use and benefit of his daughter—That his titles to Forty-one are also defective, the same never having passed from the grantee, *Smith*. That in thus representing his titles to the complainants *Roberts*, to induce them to purchase his lands, that the defendant has acted fraudulently, that the defendant is in failing circumstances, and fear would not be able to respond in an action of covenant, upon his warranty in the deed. The bill seeks to enjoin *Woolbright* from further proceeding to force the collection of the *fi. fa.*, the third note now in suit, and also from trading the fourth note, due Jan. 1st, 1843—to rescind the contract, and compel the defendant to surrender the notes, and *fi. fa.* to be cancelled, and to compel the defendant to refund the purchase money already paid. These are the material allegations in the complainants' bill—and which was sanctioned with expressions of doubt at the time, of the correctness in granting the injunction.

The defendant having answered the bill, gave ten days notice to the opposite party, that he should move in Chambers, to dissolve the injunction on the 13th day of June.

Since granting the injunction, I have carefully and fully investigated the principles upon which the complainants have relied in coming into Chancery for relief, and after which, I am now clearly satisfied that the injunction cannot be sustained. The doctrine that a purchaser of land, who is in possession under a deed, cannot have relief against his contract to pay the purchase money, upon the mere ground of a defect of title, without any previous eviction, I find running through and pervading all the cases.

*Bumpers* vs. *Platner*, 1 *Johns.* Ch. R. 213, 218—"If there be "no fraud, the purchaser must resort to his covenant if he appre-"hends a defect or failure of title, and wishes relief, before eviction. "This is not the tribunal for the trial of titles to land. It would

"lead to the greatest inconvenience and perhaps abuse, if a purcha-
"ser in the actual enjoyment of land, can be permitted on the mere
"suggestion of a defect or failure of title upon the principle of *quia*
"*timet*, to stop the payment of the purchase money and of all pro-
"ceedings to recover it.   Can this Court stop to try an outstanding
"title, or compel an absent party to litigate, who probably never
"thought of asserting such a title?   No such principle can be found
"to exist, and a previous eviction at law is always necessary."

*Abbott* vs. *Allen*, 2 *Johns*. Ch. Rep. 524—"If there is no ingre-
"dient of fraud, and the purchaser is in possession under a deed, the
"insufficiency of title is no ground for relief, unless there has been
"an eviction, the party must resort to his covenant to try titles."—
2 *Kent's* Com. 470–1–2.

The cases here referred to, recognize the principle, that if there is
fraud in the vendor, in inducing the purchaser to buy, when his titles
are either concealed, or spurious and fraudulent in themselves, equity
will relieve.   In making out this case, the complainants charge no
such facts as will or can sustain the allegation of fraud—For the de-
fendant to represent his titles as genuine and perfect, though it were
false, forms no ground for relief, unless the purchasers were precluded
from investigating for themselves, the true character of the title
claimed to exist in the vendor.   Fraud is defined to " be any cunning,
"artifice or deception, used to circumvent, cheat, or deceive another
"—Fraud, in the sense of a Court of Equity, properly includes all
"acts, omissions and concealments, which involve a breach of legal
"duty, trust or confidence, justly reposed, and are injurious to ano-
"ther—or by which an undue and unconscientious advantage is
"taken of another."—1 *Story's* Equity, 197.   The bare allegation
of fraud in the complainants' bill, without charging such acts of
concealment, artifice and deception, as involve a breach of legal
duty, trust or confidence, and which no man of common sense
would have done, unless he had been circumvented, cheated or de-
ceived, does not make such a case of fraud in legal contemplation, as
will justify this Court in granting relief.   No such charges in this
bill, but simply that *Woolbright* represented himself as being solvent,
and his titles as complete to all the aforesaid lots of land, without
offering to excuse themselves for their culpable omission and negli-

[Roberts, Roberts & Janes vs. Woolbright.]

gence in not looking to the title. In purchasing land, the Law requires every man to look to the title, consult the registry, and perform every duty incumbent upon a vigilant man, in protecting his interest, and then if he has been cheated, circumvented, or deceived, equity will relieve. In *Hume* vs. *Mill*, 13th *Vesey*, 119, the Lord Chancellor draws " the distinction between personal chattels held " by possession, and real estate held by title : The former is held by " possession—the latter by title. Possession of real estate is not " even *prima facie* evidence of title, other than a lease from year to " year. No man in his senses would ever take an offer of a pur- " chase from a man, merely because he stood upon the ground—a " purchaser must look into his title, and if he purchases land with- " out looking to the title, it is *crassa negligentia*." From this authority, it is clear to my mind, that no act is imputed to the defendant sufficiently tinctured with fraud, that will justify the Court in restraining the defendant from proceeding to collect the purchase money; but upon the other hand, the negligence of the complainants, in omitting to look into the title, will close the door of equity against their application.

As to the charge in the bill, that *Woolbright* held lot of land thirty-nine, merely as trustee for his wife, and therefore incapable of conveying, the same doctrine holds equally good. " A purchaser of " land buys at his peril, and is always bound to look to the title and " the competency of the vendor to sell, and if a purchaser with notice " actual or constructive buys land held in trust for another, he " becomes the trustee himself, notwithstanding the consideration he " has paid."—*Murray & Winter* vs. *Ballou & Hunt*, 1 *Johns*. Ch. R. 566.

That the complainants had constructive notice of the kind of title held by defendant to lot thirty-nine, before they purchased, is evident from their own exhibit, as the deed exhibited in their bill from *Rector* to *Woolbright*, was recorded in the Clerk's office of Baker county, on the 11th day of October, 1836, more than three years prior to their purchase. " The American doctrine of notice has been fully " settled," says Justice Story, in 1 *Story's* Equity, 392, " and it is " uniformly held, that the registration of any conveyance operates as " constructive notice to all subsequent purchasers of any estate, legal

[Roberts, Roberts & Janes vs. Woolbright.]

" or equitable.   If a purchaser neglects to look into the title, it will
" be considered as his own folly, and he can have no relief.—1 *Sugden*
" on Vendors, 635."

The complainants failing to make out such a case of fraud as will
justify the interposition of the powers of a Court of Chancery, and
being satisfied that lot thirty-nine was purchased with constructive
notice of the defect in the title, and under such circumstances of
negligence in refusing to examine the titles before they purchased,
this Court cannot interfere to rescind the contract, or restrain the
defendant in proceeding to collect his purchase money.   It is not
for Courts of Justice to make contracts—they can only enforce the
Law relating to the obligations of contract ; men must be vigilant in
protecting their rights and interest, and negligence will not justify
a Court of Chancery, in relieving a party from the obligations of an
extravagant and improvident contract.

As to the charge, that titles have never gone out of *Smith*, the
grantee to lot Forty-one, that is denied by the defendant in his
answer, and a copy of the deed from *Smith* to *Hilliard* is attached
to his answer, and made a part of it.   The deed from *Smith* to
*Hilliard*, the only defect charged in the bill to exist, is supplied in
the answer of the defendant, who alleges the deed to be genuine and
made in good faith.   The equity of the bill, therefore, so far as
to lot Forty-one, is sworn off, and the defendant is entitled to a disso-
lution of the Injunction.   But placing this question upon another
footing, the defendant is entitled to a dismission of the bill for the
want of equity.   " Where a purchaser has gone into possession
" under a deed, and enjoyed the premises, it is to be considered that
" he has adopted the contract, and he cannot disaffirm it.   A con-
" tract can only be rescinded *ab initio* where both parties can be
" placed in the same situation in which they stood before the
" contract, and this cannot be if either party has received a partial
" benefit, the rule of *caveat emptor* always applies where the convey-
" ance has been actually made."—*Chitty* on Contracts, 188, 276.
The complainants do not charge, that they could place the defendant
in the same situation in which he stood before the purchase, for
aught that appears upon the face of this bill, the *Roberts's* may have
sold and conveyed a portion of these very lands to some other person,

[Roberts, Roberts & Janes vs. Woolbright.]

and therefore would be incapable of returning the lands purchased. This brings me to the last allegation in the bill, and that is, the insolvency of the defendant, *Woolbright*, in being remitted to their action of covenant; and though I very much doubt from authorities brought to bear upon the preceding allegations, disposed of in this bill, even admitting that to be true, and which the defendant however denies, but states in his answer his complete responsibility, and ability to respond to any and every obligation resting upon him, whether the complainants have made his solvency at all material to the equity of their case, but as the defendant has sworn off the equity, if there was any upon that point, I shall content myself with disposing of it upon the answer, without discussing the other proposition—for these reasons, I shall therefore dissolve the injunction, and order the bill to be dismissed.

VASON, WARREN & SCARBOROUGH, Counsel for Complainants.
LYON and A. S. WINGFIELD,                         for Respondents.

WILLIAM TAYLOR, J. S. C. S. W. C.