## James *v.* Hays and Others.

Vendor and Purchaser.—*Conveyance Without Warranty.*—*Title.*—A purchaser of real estate took a quitclaim deed therefor, with notice of a defect in the title, consisting of a misdescription of the land in prior conveyances thereof, and, there being no fraud in the transaction, the vendor, by a separate writing, promised and guaranteed that he would cause said defect to be rectified, without specifying any time within which it should be corrected; whereupon, at the request of the vendor, the vendee executed his promissory note to a third person for the purchase-money.

*Held,* in a suit on said note, it not appearing that said purchaser had been evicted or had sustained any damage, that the continued existence of said defect constituted no bar to the action, or ground for enjoining its prosecution.

APPEAL from the Warren Common Pleas.

Buskirk, J.—This action was brought by the appellees against the appellant, upon a note by him executed to Henry C. Dawson, and by Dawson assigned to the appellees.

The appellant aswered in three paragraphs. The first was, that the note sued on was executed without any consideration. The second paragraph of the answer contained substantially these facts: that the only consideration for the note sued on was this: that Elijah Dawson claimed to be the owner of a certain portion of ground (which is specifically described); that the said Elijah Dawson claimed that one John Little had bought the same at sheriff's sale, that Little had conveyed it to him, and that he, the said Dawson, was to convey the same to the defendant by a quitclaim deed; that the said Dawson claimed that in the deeds from the sheriff to Little and from Little to him there was a misdescription of the said tract of land; that the said Elijah Dawson agreed in writing (a copy of which was filed with, and constituted a part of, the answer) to have said John Little to correct the said deeds, and guaranteed that Little would make such correction; that the said Elijah Dawson further agreed in the said writing that he would correct the deed made to the defendant, when the said Little had corrected the other deeds; that the defendant, thereupon, executed the note sued on, in consideration of getting the title to the said

tract of land and having the said deeds corrected; that the said note was made payable to Henry C. Dawson, at the request of Elijah Dawson; that Little refuses to correct either the deed from the sheriff to him, or the one from him to Elijah Dawson; that, in fact, there is nothing to correct, for the reason that the sheriff never levied on and sold said parcel of ground to John Little; that the said Little took no title to the same by the deed from the sheriff, and could not. and did not convey any to the said Dawson; that the said Dawson had acquired no title from the conveyance made to him by Little; and that by reason of these facts the consideration had wholly failed.

The agreement and guarantee referred to in the above answer was in these words:

"STATE OF INDIANA, WARREN COUNTY;.

June 5th, 1867.

"This will certify that I have this day deeded to David, James, by quitclaim deed, the south-west part of outlot. No. two, in the town of Independence, facing on. and being in the north-east corner of Liberty and Second streets, more. fully known as the Thomas Inlain store-house and lot, and there appearing to be a mistake in a former deed from sheriff Jones to John Little, and from Little to me, I hereby agree to rectify my deed, after having John Little to rectify and more fully describe said lots. I further guarantee that he, John Little, will so rectify said deed as above described.

"ELIJAH DAWSON."

The third paragraph contained, in substance, the same allegations as the second. It was sworn to, and prayed the court to stay all proceedings in the action on the note, until Elijah Dawson should cause the said mistakes in the said deeds to be corrected. The appellees demurred to the second and third paragraphs of the answer. The court sustained the demurrer to each paragraph of the answer, and the appellant excepted. There was an issue formed on the first paragraph of the answer. The cause was, by the agreement of the par—

VOL. XXXIV.—18.

ties, tried by the court. There was a finding and judgment for the appellees. There was no motion for a new trial. The evidence is not in the record. The only error assigned is the sustaining the demurrer to the second and third paragraphs of the answer.

Do the facts stated in the second paragraph of the answer constitute a good defense to the note? The appellant insists that they show a total failure of consideration. We do not think so. The answer contains no allegation of fraud or any unfairness or misrepresentation. The appellant purchased with full notice of all the facts. He was fully informed how Dawson derived his title, and that there was a misdescription in the deeds. There is no allegation that he has been evicted, . or that he has sustained any damage. With full notice of all these facts, he consented to take a quitclaim deed. He failed to protect himself by the covenants contained in a warranty deed. Can he, under such circumstances, plead a failure or want of title in bar of an action for the purchase-money? This court, in the case of *Laughery* v. *McLean*, 14 Ind. 106, say, " For aught that appears, the conveyance was a mere quitclaim, without any warranty whatever; and in such a case, in the absence of fraud, a want or failure of title cannot be set up in bar of the action for the purchase-money."

The Supreme Court of Connecticut, in the case of *Bark-hamsted* v. *Case*, 5 Conn. 528, say, " If there was no fraud, and no covenants to secure the title, the purchaser has no remedy for his money, even on failure of title, either at law or in equity. *Abbott* v. *Allen*, 2 Johns. Ch. 519; *Chesterman* v. *Gardner*, 5 *Id.* 29. The grantee of land, if he takes no covenants, and there is no fraud in the sale, has assumed on himself the risk of title; and any security given by him for the purchase-money is on a legal consideration."

The appellant has pressed upon the consideration of the court the case of *Murphy* v. *Jones*, 7 Ind. 529, and has earnestly insisted that the principle there decided conclusively demonstrates that the court erred in sustaining the demurrer to the second paragraph of the answer. The facts in that

case were these: Mrs. Jones represented that her father, William Murphy, had died intestate, in the state of Ohio, seized of certain real estate, that she was one of his heirs and entitled to one-ninth part thereof. The defendants purchased her interest in said estate, and took from her and her husband a quitclaim deed, and executed their note for three hundred dollars. The grantees were in the possession of the land at the date of the deed. Suit was brought on the note. The defendants admitted the execution of the note, that William Murphy died seized of the land, and that Mrs. Jones was one of his children, but averred that she took by inheritance no interest in the estate of her father, for the reason that he had devised his land by will to other persons and had expressly provided that she should take no interest in his lands. This court say, "Some consideration is necessary to uphold a contract. If there be any, the law will not enquire whether it is adequate or not. But when a promise is alleged to have been made in consideration of the release of any interest, if it appears that the promisee had in fact no interest which passed by the release, there will be no consideration for the promise alleged."

In that case, the purchase was made in the belief that Mrs. Jones had an actual interest in her father's estate, when, in fact, she had no interest whatever. It is to be presumed that this court came to the conclusion that the representations made by Mrs. Jones were false and fraudulent, and amounted in law to a fraud. The decision cannot be supported on any other theory. If the court intended to hold, and did hold, that a want or failure of title, in the absence of fraud, where there was no warranty whatever, was a bar to an action upon a note given for the purchase-money, then the case was overruled by the decision of this court in the case of *Laughery* v. *McLean, supra,* where a directly opposite doctrine was announced. But that case is clearly distinguishable from the one under consideration. In that case, there were false representations, the grantor had no interest whatever, the grantees were not placed in possession, and

acquired no title, no interest, or benefit. In the case under consideration, there were no false or fraudulent representations; the appellant purchased with full notice of the mis-description in the deeds, took the possession, and still retains it. The grantor had at least an equitable interest in the premises sold, which might mature into a legal title.

But it is claimed by the appellant, that the agreement and guarantee of Elijah Dawson to have the mistake corrected ought to bar this action. We do not think so, but, on the contrary, are of the opinion that such agreement deprives the appellant of any defense to this action. As has been shown, the appellant purchased with notice of the defective title, waived all covenants, executed his note to a third party, and took the personal obligation of Elijah Dawson to have the mistake corrected. The note was payable two months after date. The agreement does not specify any time in which the mistake was to be corrected. The correction of the mistake did not constitute a condition precedent to the payment of the note; and if the agreement had so provided, we cannot see how it could affect the rights of Henry C. Dawson, the payee, as it is neither alleged nor proved that he had any knowledge of the defective title or the execution of the guarantee and agreement by Elijah Dawson. The giving of the note to a third party and the taking of the obligation of the vendor was a waiver and abandonment of any defense to the note on account of the defective title. If he has any remedy, it is upon the guarantee of Elijah Dawson. The court committed no error in sustaining the demurrer to the second paragraph of the answer.

But if the court had erred in sustaining the demurrer, we would not for that reason reverse the case. Every fact alleged in the second paragraph of the answer could have been proved under the first paragraph of the answer, alleging an entire want of consideration. This court, in the case of *Laughery* v. *McLean, supra,* say, "It is not the practice of this court to reverse a judgment, otherwise correct, for an error in sustaining a demurrer to a plea, or paragraph in the

answer, if, as in this case, there is another issue upon the record under which the same evidence would be admissible."

Having reached the conclusion that there was no valid defense, it necessarily results that the court committed no error in sustaining the demurrer to the amended third paragraph. The court would have no right to stay the proceedings unless there was some valid defense.

Judgment affirmed, with costs.

*J. H. Brown*, for appellant.

*M. M. Milford*, for appellees.