## Hix v. Gosling *et als.*

1. MARRIED WOMEN. *Separate estate.* Under a title bond to husband and wife, by which the obligor, reciting that he had sold certain realty to the wife for her sole and separate use, undertakes to make to the wife, for her sole and separate use, a good warranty deed in fee on payment of the purchase money, reserving to the husband during his lifetime, the management of the property for the use of his wife, himself and family; the wife takes the equitable estate, the father the right to manage during life in trust as aforesaid, and the children a right to participate in the benefits of the income while members of the family in the mother's lifetime, and, after her death, there being no breach of the bond, the children take the equitable estate by descent, subject to the reservation in the father of the management of the property for himself and family.

Hix *v.* Gosling.

2. SAME. *Same. Power of sale. Power of courts of equity.* The power of sale of property settled to the sole and separate use of a married woman conferred upon her by the instrument of settlement, must be construed as intended for the purposes of the trust, either by reinvestment on the same uses, or by appropriation for the wife's necessities, and will not sustain a voluntary conveyance by her. Nor can a court of chancery with her consent pass her separate property beyond the power reserved to her, and legal proceedings instituted for such a purpose will either be void for want of jurisdiction, or treated as amounting only to an agreement of record, and, if attacked, will be set aside for fraud unless sustained by the clearest testimony of good faith and fair dealing on the part of those at whose instance the proceedings were instituted.

---

FROM BEDFORD.

---

Appeal from the Chancery Court at Shelbyville. A. S. MARKS, Ch.

WISENER for complainant.

COOPER, EAST and WARDER for Holt.

IVIE and SCUDDER for Holt's heirs.

COOPER, J., delivered the opinion of the court.

On the 12th of June, 1857, Wm. Gosling executed a title bond to Isaac B. Holt and Frances F. Holt, husband and wife, reciting that he had that day "bargained and sold to the said Frances F. Holt, for her sole and separate use, and for a consideration named, an undivided moiety of a tract of land with the mill power and privileges thereon, the said Isaac B. Holt having the control and management of the said moiety of said land for the use and support of the said Frances F. and their children." The condition of the bond was to make to the said Frances F. Holt, for
36

her sole and separate use, free from the debts of her said husband, a good warranty title in fee on the payment of the purchase money, reserving to the said Isaac B. during his lifetime the management of said property for the use of his said wife, himself and family. The instrument adds: "It is to be understood that the said Isaac B. Holt and wife are at liberty to sell said moiety of land and mills at any time during the life of the said Isaac B., should she so desire." The title of the other moiety of this property being retained by Gosling, the mill was placed in the charge of Isaac B. Holt, and run for the joint benefit of the co-owners. On the 13th of August, 1859, two thousand dollars of the purchase money was paid by a conveyance to Gosling by Holt and wife of a tract of land, the title to which had been vested in the wife to her sole and separate use in 1851. The residue of the purchase money was paid from time to time by Holt out of the profits of the moiety of the mills sold to the wife as aforesaid. On the 14th of March, 1870, Wm. Gosling and Isaac B. Holt join in a bill against Frances F. Holt, stating the foregoing facts, that the purchase money for the moiety of the land sold had all been paid, and that Gosling was willing to make a deed under the instructions of the court. The bill further stated that the defendant had recently been attacked with paralysis, and, although her mind was not lost, yet she was in such a condition that it was thought best to come into the Chancery Court for the protection of Gosling, so that he might convey without fear of being troubled in the

future by the heirs of said Isaac B. Holt and Fran-
ces F. Holt.　The bill claims that Isaac B. Holt is
entitled to the moiety of the land sold by a trust re-
sulting from the payment by him of the purchase
money, there being a general allegation that "he paid
the entire amount of the purchase money," without
stating how.　The bill further charges that the wife
so desires the title to be made to the husband　The
prayei is that the court would, on final hearing, de-
cree the land to the husband "as a resulting trust,"
and authorize the land to be conveyed directly to him.
An answer was drawn up for the defendant by the
same solicitor who drew the bill, admitting the pay-
ment of the entire consideration by the husband, and
expressing the defendant's willingness to have the title
made as prayed.　The answer was signed by other
counsel, and purports to be sworn to by the defend-
ant before a justice of the peace.　The court there-
upon commissioned the same justice to take the privy
examination of the defendant as to her wishes in the
premises.　The return on the commission was written
by the solicitor of the complainants, but signed by
the justice, and was to the effect that the defendant
wished the title to the land to be vested in the hus-
band.　Upon the return of this commission, and the
sworn statement of two physicians that, in their opin-
ion, the defendant was capable of transacting any busi-
ness she might desire, the court, reciting that it ap-
peared that the purchase money had all been paid by
the husband, and that the wife had, on privy exami-
nation, desired title to be made to him, divested all

the title and interest out of Gosling and the wife and vested it in Isaac B. Holt.

Afterwards, on the 10th of October, 1870, Gosling and Holt sold one moiety of the mill property to Wm. G. Smalling, and the other moiety to Wm. H. H. Word on the 24th of December, 1870. Frances F. Holt died without ever having recovered from the attack of paralysis. On the 11th of July, 1871, Word sold his half of the mill property to Kenneth R. Hix, making him a deed in fee with covenants of general warranty. On the 6th of August, 1872, Kenneth R. Hix filed the original bill in this cause against Isaac B. Holt, Wm. Gosling, W. H. H. Word, and the children of Isaac B. and Frances F. Holt, some of whom were infants. The bill stated that complainant at the time of his purchase of a moiety of the mill property from Word was entirely ignorant of any difficulty in the title, and had only recently learned that the Holt children set up a claim to their mother's moiety under the title bond, and were about to assert their right by suit. The bill charged that Word was himself well informed of the claim, and "fraudulently withheld that knowledge from complainant." The object of the bill was not to rescind unless the title was bad, but to have the validity of the title ascertained and declared, and for this purpose the children of Isaac B. and Frances F. Holt were made defendants, and one prayer of the bill was that the parties defendant be compelled to litigate the title among themselves. A further prayer is, that the sale of Word to complainant be rescinded for the fraudulent conceal-

ment of the defect of title, if the title should be found to be bad. Isaac B. Holt and Gosling moved to dismiss the bill, which motion was overruled, and afterwards filed a demurrer which was also overruled. Answers were then put in by them and Word, and the parties proceeded to take evidence. Afterwards, and after the filing by the Holt children of an original bill in the nature of a cross-bill to set up their right to the land, Kenneth R. Hix and John W. Hix, the latter as surety on the purchase notes to Word, filed an amended and supplemental bill on the 12th of October, 1874, to bring before the court the fact that the Holt children had actually brought suit to assert their right to the property, and to enjoin the collection of judgments recovered against them on the purchase notes. This bill was answered by the defendants, and the cause proceeded in course, although a separate decree, for some reason, seems to have been rendered in it at the same time the original suit and the bill of the Holt children were finally heard and disposed of.

On the 23d of July, 1873, the Holt children filed their bill against Isaac B. Holt, Wm. Gosling, Kenneth R. Hix, Wm. G. Smalling and W. H. H. Word, claiming a moiety of the mill property under the terms of Goslings's title bond. They also attacked the proceedings under the bill of Isaac B. Holt and Gosling against Frances F. Holt as fraudulently collusive on the part of the complainants, and void as against them by reason of the fraud, and because, as they alleged, the said Frances F. Holt was, at the time, wholly

incompetent of body and mind. This bill was answered by the parties, proof taken, and the causes were all heard together, and a decree rendered at the April term, 1875, of the court. In substance the Chancellor held that the Holt children had failed to successfully impeach the proceedings by which the title to the property in controversy had been vested in their father, and consequently that the title of the latter, and of those claiming under him and Gosling, was good. He therefore dismissed the bill of the Holt children, and the original bill of Kenneth R. Hix in one decree, and the amended bill of Kenneth R. and J. W. Hix at the same time by a separate decree. The Holt children appealed from the decree dismissing their bill, and Kenneth R. Hix and J. W. Hix appealed from the decree dismissing the amended bill.

The original bill of Kenneth R. Hix so far as it sought to compel the defendants to litigate the title to the land in his possession under a deed in fee with covenants of general warranty was without any shadow of law. It was an attempt to do what Chancellor Kent distinctly repudiates as unknown to the practice and doctrine of the court of chancery in *Abbot* v. *Allen*, 2 Johns. Ch., 519. To allow such a bill, unless in a very exceptional case, upon a supposed claim not set up by suit, would be both new in principle and wrong in morals. *Ryland* v. *Brown*, 2 Head, 275; *Cohen* v. *Woollard*, 2 Tenn. Ch., 689. And of course there is no pretense for sustaining the bill on the ground of interpleader. The complainant was bound by contract to one of the parties and had no right

whatever to pay the money to another. *Padgett* v. *Baker*, 1 Tenn. Ch., 222. If, therefore, the demurrer filed had been confined to that part or aspect of the bill, it .should have been sustained. But both the motion to dismiss and demurrer were addressed to the whole bill, and were too broad if the bill contained any equity. And the bill does contain equity, for it is well settled that if a purchaser has been imposed upon in the sale by intentional misrepresentations or concealments, he is entitled to redress in addition to, and beyond his covenants. *Napier* v. *Elam*, 6 Yer., 117; *Woods* v. *North*, 6 Hum., 309; *Edwards* v. *McLeay*, 2 Swanst, 287. If therefore the title of Isaac B. Holt was defective by reason of the claim of his children, the proof showing that Word knew of this claim and intentionally concealed it from his vendee, the Chancellor was in error in dismissing Hix's bills. The amended bill clearly formed only a part of the original bill and should have been disposed of with it, for it merely introduces supplemental matter to sustain the relief sought by the original bill. *Bradley* v. *Dibrell*, 3 Heis., 522; *Wilson* v. *Beadle*, 2 Head, 512; *Catton* v. *Carlisle*, 5 Mad., 427; *Hurd* v. *Everett*, 1 Paige, 124. Both records are in such cases treated as one record. *Wilkinson* v. *Fowkes*, 9 Hare, 198, 594. The appeal taken brought up the whole case, and even if there was doubt upon this point, the amended bill contains in itself all the facts essential to the relief sought.

The real issue is upon the title of the Holt children. The bill of these children claims title

by virtue of the terms of the title bond to their parents, and also as heirs of the mother, the proceedings in chancery which divested the title of the latter being treated as void, either for fraud or the incapacity of the mother. The title bond, it will be seen, recites a sale to "Frances F. Holt for her sole and separate use," and is conditioned to make "to the said Frances F. Holt, for her sole and separate use," a good title with liberty in her to sell during the life of the husband. It is the reservation in the husband of the management of the property "for the use and support of the said Frances F. and their children," as expressed in one place, and "for the use of his said wife, himself, and family," as expressed in another place, which alludes to the children. Obviously the title is in the wife, subject to the management of the husband for the benefit of himself and wife, and during the life of the wife for the benefit of the children so long as they constitute members of the family. *Harris* v. *Alderson*, 4 Sneed, 250; *Moore* v. *Simmons*, 2 Head, 546; *McCall* v. *McCall*, 1 Tenn. Ch., 504. The interest of the father both before and after the death of the wife would be in the usufruct, not in the estate. *Benton* v. *Pope*, 5 Hum., 392; *Bearden* v. *Taylor*, 2 Col., 134; *Porter* v. *Greer*, 1 Col., 564. The interest of the children during the life of the mother was merely usufructuary. Upon the death of the mother, there never having been any breach of the title bond, the equitable estate of the vendee descended to the children, if not previously divested out of her, subject to

the reservation in favor of the father during his life of the management of the property "for the use of himself and family." *Stevenson* v. *Yandle*, 3 Hay., 109. The rights of the children must turn therefore upon the validity of the proceedings in chancery which undertook to divest the mother's title. The consideration recited in the title bond is the sum of $4,250, evidenced by the three notes of husband and wife, at one, two and three years, "to be paid with the sole and separate funds and estate of the said Frances F. Holt." The purchase money was paid, as alleged by Holt and Gosling in their bill against the wife, in land held by Frances F. Holt to her sole and separate use, and out of the profits of the mill property, also settled to her 'sole and separate use. These surplus profits were separate estate. *Young* v. *Jones*, 9 Hum., 551; *Griffith* v. *Dewitt*, Thomp. Cas., 187. The consideration was consequently paid as provided; and it is of no consequence whether, as the husband now contends, the conveyance to the wife of the land used in paying for the mill property, and the contract for the conveyance of the mill property itself were made to hinder and delay the husband's creditors, or were voluntary settlements by him on the wife. In either view the property became at once hers. Nor would it make any difference if the whole consideration for the mill property had actually been paid by the husband. A resulting trust can only arise at the time of the transaction. *Gee* v. *Gee*, 1 Sneed, 395. When the title bond was executed the intention was either to cover up the property from the husband's

creditors, or to confer an equitable estate on the wife, and in either case a trust in favor of the husband is out of the question. The result is, that at the time of the proceedings in chancery the wife had the equitable estate im the land, subject to the reservation of the husband's management, with a power of sale in a prescribed mode should the wife so desire.

The power of sale conferred upon a married woman of property settled to her sole and separate use must be construed in connection with the main object of the trust, the separate benefit of the wife. The conversion by sale is intended to be for the purposes of the trust, either by reinvestment on the same uses, or by appropriation for the wife's necessities. *Cumming* v. *Williamson*, 1 Sandf. Ch., 25. It would be a perversion of the intention in conferring a power of sale for the purposes of a trust to extend it to a transaction in violation of those purposes, as would be a gift. *Cardwell* v. *Cheatham*, 2 Head, 14; *Head* v. *Temple*, 4 Heis., 41; *Perkins* v. *Elliott*, 8 C. E. Green, 526; *Lightfoot* v. *Bass*, 2 Tenn. Ch., 677.

It is the settled law not only of this State but of English and American jurisprudence, that where the instrument of settlement on a married woman points out a method in which the estate may be disposed of, that method will be taken as exclusive of all others, and the general power of disposition cannot be exercised. *Ross* v. *Ewer*, 3 Atk., 156; *Morgan* v. *Elam*, 4 Yer., 375; *Ware* v. *Sharp*, 1 Swan, 489; *Starnes* v. *Allison*, 2 Head, 221; *Leaycraft* v. *Hedden*, 3 Green Ch., 512; *Williamson* v. *Beckham*, 8 Leigh,

20; 2 Bish. Mar. Wom., sec. 185. Courts of equity have no power, even with the consent of the wife, to pass her separate property beyond the power reserved to her by the instrument of settlement. *Richards* v. *Chambers*, 10 Ves., 580; *Lee* v. *Muggeridge*, 1 V. & B., 118; *Sturgis* v. *Corp*, 13 Ves., 190; *Robinson* v. *Dart*, Dud. Eq., 128.

To an application by a married woman to aid her in transferring her separate estate, Lord Hardwicke, in his day, said in substance: "If she has any power let her exercise it, the court cannot give it." *O'Keate* v. *Calthorpe*, cited in 8 Ves., 177, and 10 Ves., 583.

It is clear, therefore, that as Frances F. Holt had no power out of court to give away her equitable estate by deed with privy examination, so the court of chancery could not lawfully do it for her. 2 Story Eq. Jur., sec. 1396. But the court did, in the proceedings under consideration, undertake to divest her estate, and the question remains as to the effect of such action. No doubt the decree could have been reversed on appeal or by bill of review, either by her or her privies in estate. But the latter have seen proper to attack the decree by an original bill whereby the extent of its estoppel if valid, and its validity are brought in question. Treating the proceedings as a regular suit conducted fairly and in due form, it seems logically to follow that they must have the usual effect of judicial proceedings. Accordingly Mr. Bishop thinks that such proceedings will bind the parties to them, whether those parties are capable of binding themselves out of court or not. 2 Bish. on

Mar. Wom., sec. 386. Carried to its logical result, this doctrine would enable a married woman by neglecting her rights, or by actively aiding in destroying them, to charge her separate estate or dispose of it in plain violation of the positive restrictions of the instrument of settlement. But the courts have not permitted a married woman's separate estate to be reached through a judgment at law which she has permitted to go against her. *Mayberry* v. *Neely*, 5 Hum., 337; *Swayne* v. *Lyon*, 17 P. F. Smith, 436; *Chatterton* v. *Young*, 2 Ten. Ch., 768. And it would be a curious anomaly, after the abolishment of fines and recoveries as a means of getting rid of entailments, to have them virtually restored in this new form for the purpose of avoiding the restrictions which the law has thrown around a married woman for the protection of her separate estate. It seems safer to hold what, as we have seen, has been laid down by the court of chancery in deciding upon a direct application, that the court has no jurisdiction to pass the wife's separate estate beyond the power reserved to her by the instrument of settlement.

But whatever may be the estoppel of a decree on a married woman in a case of real litigation, so far as the matters actually in issue are concerned, and as to all matters which might have been litigated as a defense to the action, the decree will not operate to estop her or her privies in estate as to her other rights. *Malloney* v. *Horan*, 49 N. Y., 111; *Lewis* v. *Smith*, 9 N. Y., 502; *Crenshaw* v. *Creek*, 52 Mo., 98. The bill in the proceedings under consideration

Hix *v.* Gosling.

was based upon a supposed resulting trust in the husband by reason of the payment of the purchase money, and the dissatisfaction of the wife with the terms of the bond, and the decree is limited to these grounds.

No issue, and no decision is made on the power of the *feme* to convey to her husband without consideration, nor on the jurisdiction of the court to go beyond the power. In this view the husband took the legal title acquired by virtue of the decree subject to the trusts of the bond, these trusts never having been parted with by the exercise of the power by the *feme*, or by the court.

In reality, however, there was no real litigation in the case. In the most favorable view for the vendor and the husband, the proceedings were gotten up merely for the purpose of passing the wife's interest to the husband through the forms of the court, instead of by the private act of the parties. They amounted only to a voluntary conveyance by the wife, the privy examination by a commissioner being in lieu of the ordinary privy examination to a deed. But the entry of an agreement between parties upon the records of a court will not give to the agreement any greater validity than it had before. *Rice* v. *Alley*, 1 Sneed, 52; *Revis* v. *Wallace*, 2 Heis., 662; *Dillard* v. *Harris*, 2 Tenn. Ch., 193. It is the substance, not the form, which must be looked to. Although there may be service of process and the usual proceedings of a litigation, yet if there be no party litigating there can be strictly no judicial determination. "In order to make a sentence there must be a real interest, a real

prosecution, a real defense, and a real decision." *Earl of Bandon* v. *Becher*, 3 Cl. & F., 510, citing the language of Wedderburn, Solicitor General, in the Duchess of Kingston's case, 20 How. St. Tr., 478.

If the proceedings under consideration constituted a real litigation, and were *prima facie* valid, they may be impeached for fraud on the part of the husband, either by the wife or her privies in estate. The bill itself shows that the court was resorted to because of the condition of the wife. It stated that she had been recently attacked with paralysis, and, although her mind was not lost, yet she was in such a condition that it was thought best to come into equity to protect the vendor against the heirs of the vendee. In a direct attack upon the good faith of the transaction, the burden of proof under such circumstances is on those who commenced the proceedings to show capacity, freedom of action, and good faith. The proof is that the wife was feeble of body and weak of mind, almost incapacitated by the paralysis of the muscles from expressing herself intelligibly. It does not appear that she had independent legal advice in a matter which swept away her entire estate from herself and children. It does appear that her answer to the bill, as well as to the return of the commission of privy examination, was written by the solicitor of the husband. The commissioner to take the privy examination was incompetent to read his own commission or write his return, and proves that he understood only one remark made by the defendant when he went to take her examination, and that the remark was

altogether foreign to the purpose of his visit.    A contract with full legal advice on one side, and none on the other will rarely ever stand the test of judicial scrutiny.    *Clarkson* v. *Hanway*, 2 P. W., 205; *Murry* v. *Palmer*, 2 Scho. & Lef., 474; *Kempson* v. *Ashbee*, L. R., 10 Ch. App., 19; *Baker* v. *Bradley*, 7 D. M. & G., 621.    And the fact that the person who undertook to explain the contract to the aggrieved party was illiterate and incompetent is a strong circumstance to avoid the act.    *Price* v. *Price*, 1 D. M. & G., 308.    *A fortiori*, I take it, where judicial proceedings are resorted to for the purpose of giving color of validity because of the helpless condition of the party.    The evidence is not satisfactory that the wife, in her then condition, was capable of understanding the full scope of her act, or that she did give her consent to what was done, freely and understandingly.

The defendant Gosling is estopped to dispute the payment of the purchase money for the mill property by his admission of record.    He has adopted the proceedings by acquiescing in them, and joining with Holt in making sales under them.    The purchasers are none of them *bona fide* purchasers for value, and without notice, within the decisions.    *High* v. *Batte*, 10 Yer., 335.    Nor is this defense made with the requisite particularity by any of them.    The legal title to the moiety of the land in controversy must be divested out of the defendants, and vested in the Holt children, subject to the reservation in favor of Isaac B. Holt of the management of the property during

his lifetime for the use of himself and children What the relative rights of the father and children are, under the reservation, is not raised by the pleadings, and has not been argued. If not settled between them, they may be determined upon proper amendments. The children are entitled to the usual account of rents and profits, after allowing taxes and permanent repairs, against the several parties who have been in possession, subject to the father's interest therein under the reservation when declared. The several purchasers being all before the court, the decree will declare their equities *inter sese*, as well as the equities between them and Gosling and Holt, upon the basis of eviction and recission. The cause will be remanded for the execution of the decree. Holt, the father, and Gosling will pay the costs of the entire cause to date.