## PIPER *v.* HILLIARD.

A mortgaged to B shares in the Stewartstown bridge. The mortgage, not being sworn to or recorded as prescribed by statute, was invalid as against attaching creditors without notice. C, a creditor of A, having no notice of the mortgage, commenced the levy of an execution on the shares. At the sheriff's sale, under C's execution, the shares were sold, "subject to all legal claims on said bridge," to D, who at that time had notice of the mortgage. *Held*, that D took the shares unincumbered by the mortgage.

IN EQUITY. The bill, brought by Thomas Piper against Henry S. Hilliard, the Stewartstown bridge, and other parties, alleges that James M. Hilliard mortgaged to the plaintiff sixty-seven shares in the stock of the Stewartstown bridge, and subsequently executed several mortgages of the same stock to parties having knowledge of the plaintiff's prior incumbrance, some of which subsequent mortgages are now held by Henry S. Hilliard. The bill prays that, in default of payment of the mortgage debt, the plaintiff's title to the shares be made absolute, and the right to redeem the same be foreclosed, and the corporation be ordered to issue certificates of said shares to the plaintiff.

Answers having been filed, the case was tried by the court, who found the following facts:

James M. Hilliard, on May 28, 1864, executed a mortgage to the plaintiff of sixty-seven shares in said corporation, to secure a note for four hundred and eighty-seven dollars. This mortgage was not sworn to, nor was it recorded in the town clerk's office. It was imperfectly recorded in a book of the defendant corporation.

The capital stock of the corporation consists of seventy-five shares.

On September 2, 1869, Jennison & Crane recovered a valid judgment against James M. Hilliard, upon which execution was issued, which was levied by an officer upon seventy-five shares of the Stewartstown bridge stock, which was sold at a sheriff's auction, Nov. 6, 1869, " subject to all legal claims on said bridge," to Henry S. Hilliard, for three hundred and sixty-three dollars. The purchaser at that time had knowledge of the existence of the plaintiff's claim.

The court ruled that, upon the foregoing facts, the plaintiff was entitled to the decree prayed for. To this ruling the defendant, Henry S. Hilliard, excepted.

*Ray & Drew*, for the plaintiff.

*Fletcher & Heywood*, for the defendant.

\*Smith, J. No certificate of the stock was delivered by James M. Hilliard to the plaintiff. The transaction between James M. Hilliard and the plaintiff was not a pledge of the stock, nor was it so intended. The plaintiff must claim under his mortgage, or not at all. *Janvrin* v. *Fogg*, 49 N. H. 340. The mortgage, not having been sworn to or recorded as prescribed by statute, was not valid against attaching creditors without notice. Comp. Stats., ch. 138, sec. 10 ; Gen. Stats., ch. 123, sec. 12.

Jennison & Crane must have commenced their levy at least thirty days prior to the sale. Gen. Stats., ch. 217, sec. 16. The commencement of the levy, like an attachment, created a lien upon the shares, which would ripen into a complete title if perfected by the subsequent seasonable completion of the levy by a sale. The title, when thus perfected, relates back to the beginning of the levy, as in levies on real estate—*Colburn* v. *Pomeroy*, 44 N. H. 19—and takes effect from that time. The levying creditors stand substantially in the position of persons purchasing at the date of the commencement of the levy, and no notice given to them after that date can abridge their rights. It does not appear that the creditors, at the commencement of the levy, or indeed at any time, had notice of the so-called mortgage; and there is, therefore, no occasion to consider the question discussed in *Gooding* v. *Riley*, 50 N. H. 400. They were entitled to have the shares applied, by sale on the execution, to the satisfaction of their judgment, without any diminution in value on account of the mortgage which

---

\* Ladd, J., did not sit.

was invalid as against their levy. The levy did not formally vest the title in the creditors,—differing in this respect from a levy on real estate. But it was through the levy that the purchaser at the auction derived his title. He is, in effect, the grantee of the levying creditors rather than of the debtor. The relative positions of Jennison & Crane and Henry S. Hilliard differ more in form than in substance from the positions they would have occupied if real estate had been set off to Jennison & Crane on their execution, and afterwards conveyed by them, by quit-claim deed, to Henry S. Hilliard. Jennison & Crane are, in effect, innocent purchasers without notice; and Henry S. Hilliard is a purchaser with notice from purchasers without notice.

So long ago as 1695, in the case of *Harrison* v. *Forth*, 1 Eq. Cases Abridged, Notice, A 6, p. 331, it was decided that a purchaser with notice from a purchaser without notice holds the estate discharged of the incumbrance; " for, otherwise, an innocent purchaser without notice must be forced to keep the estate, and cannot sell it." That decision has since been generally followed—1 Story's Eq. Jur., 9th ed., secs. 409, 410; 4 Kent's Com. 179; 2 Leading Cases in Equity, 3d Am. ed., 68, 69; 1 Parsons on Notes and Bills 261, *q.*; 2 ditto 26, 27; Redfield & Bigelow's Leading Cases on Bills of Exchange and Promissory Notes 261, 262; *Trull* v. *Bigelow*, 16 Mass. 406, pp. 418–420; *Boynton* v. *Rees*, 8 Pick. 329, p. 332. " The reason is," said Chancellor KENT, " to prevent a stagnation of property, and because the first purchaser, being entitled to hold and enjoy, must be equally entitled to sell." *Bumpus* v. *Platner*, 1 Johns. Ch. 213, p. 220. Otherwise, the *bona fide* purchaser " would not enjoy the full benefit of his own unexceptionable title. Indeed, he would be deprived of the marketable value of such a title." 1 Story's Eq. Jur., 9th ed., sec. 409. To refuse to apply this doctrine to the case of a levying creditor might amount to denying that a beneficial interest could be acquired by a levy. If the debtor or the mortgagee attends the sale, and there gives public notice of the incumbrance, all buyers at the auction will be purchasers with notice. If, then, the buyer cannot stand in the shoes of the levying creditor, he must take subject to the mortgage, for he purchased with notice of it. The result would be, that the property could not be sold for its full unincumbered value; and the levying creditor might be effectually precluded, by what took place after the lien of his execution had attached, from availing himself of the lien to satisfy his claim. This cannot be the law. *Henderson* v. *Downing*, 24 Miss. (2 Cushman) 106. We think that, if the shares had been sold on the execution without qualification or limitation, there could have been no question of the purchaser's right to hold the shares unincumbered by the mortgage.

The shares were sold " subject to all legal claims on said bridge." Does this limitation render the purchaser's title subordinate to the plaintiff's mortgage? The creditors had a right to sell the shares free from this incumbrance. They might have something to gain, and certainly had nothing to lose, by so doing. Otherwise, the property might

not have sold for enough to satisfy their execution. The party who assert that they sold subject to this mortgage, assert that they waived a right. To satisfy us of such a waiver, something more is required than the language here used, which is at least as susceptible of the interpretation that they did not waive their right, as of the opposite construction. Literally, the language refers to claims on the bridge, not on the stock. It may mean " subject to all claims having legal priority or validity as against the execution creditor." There may have been an impression that a selling officer could be held liable upon an implied warranty of title ; and this ·phrase may have been used to rebut a possible implication of warranty, rather than to limit the title acquired by the vendee. We are not questioning the authorities which hold that the· purchaser of an equity of redemption, or the purchaser of property described as " subject to a mortgage," is estopped from disputing the validity of the mortgage. See *Brewer* v. *Hyndman*, 18 N. H. 9 ; *Flanders* v. *Jones*, 30 N. H. 154 ; *Bean* v. *Brackett*, 34 N. H. 102, p. 122 ; *Horton* v. *Davis*, 26 N. Y. 495 ; *Freeman* v. *Auld*, 44 N. Y. 50 ; *Howard* v. *Chase*, 104 Mass. 249 ; *Barney* v. *Leeds*, 51 N. H. 253, pp. 270, 271. In such cases, it is held that the right to question the mortgage has not been conveyed to the purchaser. He has bought nothing but the right of redeeming from the mortgage. But we do not think the language now under consideration should be construed as subordinating the vendee's title to the mortgage.

The plaintiff cites *True* v. *Congdon*, 44 N. H. 48. In that case, the return of an execution sale was, that Congdon bought " all of the interest which Charles Bailey, the debtor within named, had in and to" certain lumber. It was held that the purchaser did not thereby acquire the rights of Bailey's creditors, but only the rights of Bailey himself ; and that, as he stood in the place of Bailey, he could not show, in defence of his title to the lumber, that the course of dealing between True and Bailey was fraudulent as to *bona fide* creditors of Bailey. In *True* v. *Congdon*, the court did not advert to *Kingsbury* v. *Wild*, 3 N. H. 30. In the latter case, the plaintiff claimed real estate under an administrator's deed, purporting to convey " all the right," &c., which the intestate had in the land " at the time of his death." The defendant claimed under a deed made by the intestate in his lifetime with intent to defraud creditors. It was objected that, at the time of the intestate's decease, he had no right in the land ; but it was held that the administrator's deed conveyed the estate to the plaintiff, and gave him the right to avoid the fraudulent conveyance. Without questioning the authority of *True* v. *Congdon*, it is sufficient to say that we do not think the principle of that decision requires the adoption of the construction favorable to the present plaintiff in the case at bar.                                             *Exception sustained.*